**BLUE TEE CORP., Petitioner,**

v.

**KOEHRING COMPANY and AMCA International Corporation, Respondents.**

**No. 90 Civ. 2654 (RWS).**

United States District Court, S.D. New York.

Dec. 21, 1990.

Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City (Robert L. Sills, of counsel), for petitioner.

Lord Day & Lord, Barrett Smith, New York City (Warren H. Colodner, of counsel), for respondents.

## OPINION

SWEET, District Judge.

Petitioner Blue Tee Corp. ("Blue Tee") has petitioned, pursuant to § 9 of the Federal Arbitration Act, 9 U.S.C. § 9 (the "Act"), to confirm an arbitration award rendered on March 30, 1990. Respondents Koehring Company ("Koehring") and AMCA International Corporation ("AMCA") have moved pursuant to § 10(d) of the Act and Rule 12(b)(6), Fed.R.Civ.P., for an order dismissing the Petition with prejudice and vacating the findings of the Arbitrator. Blue Tee has also moved for sanctions against respondent pursuant to Rule 11, Fed.R.Civ.P. For the reasons set forth below, the Blue Tee's petition to confirm the arbitration award is granted, and AMCA's motion is denied. The motion for sanctions pursuant to Rule 11 is also denied.

### The Parties

Blue Tee is a Maine corporation with New York offices. Koehring is a Delaware Corporation, and a wholly-owned subsidiary of AMCA, also a Delaware Corporation. Hereinafter, the Respondents will be referred to collectively as AMCA.

### Prior Proceedings

Blue Tee filed its petition on May 11, 1990. Argument on this motion was heard on October 19, 1990.

## The Facts

The arbitration proceedings that underlie the present action arise out of an agreement by which Blue Tee was to purchase certain assets, principally drilling rig inventory, from the Speedstar Division of AMCA, pursuant to an Asset Purchase Agreement (the "Agreement") entered into on May 26, 1989 after months of negotiations between the parties.

The Agreement called for Blue Tee to pay a preliminary purchase price at the closing on June 1, 1989 (the "Closing Date") in accordance with the calculations based on the valuations of the assets as of May 5, 1989. These valuations were set forth on a Preliminary Statement that was delivered to Blue Tee by AMCA before the Agreement was signed on May 26, 1989.

In the final hours before the Agreement was signed on May 26, 1989, the parties made last minute adjustments to the valuations set forth in the Preliminary Statement, which revisions were inserted by hand into the Preliminary Statement. Among these last minute adjustments to the Preliminary Statement was the parties' agreement that, for valuation purposes, (1) the inventory to be purchased would be divided into various categories; (2) the inventory for which a price adjustment would be made (the "good inventory"), would be valued on a dollar for dollar basis; and (3) no compensation would be paid to AMCA for any other inventory, even though such other inventory would be transferred to Blue Tee. The Agreement did not reflect these adjustments.

Pursuant to Section 3.3 of the Agreement, AMCA was to prepare a Final Statement within thirty days of the Closing Date that was to determine the final purchase price using valuations as of May 31, 1989 which were based, in part, on a physical inventory and an inventory reconciliation to be performed subsequent to the closing.

On June 1, 1989, in accordance with the Preliminary Statement, Blue Tee paid AMCA a preliminary net cash purchase price of $3,159,000. AMCA thereafter prepared its Final Statement pursuant to Section 3.3 of the Agreement, which provides, in pertinent part:

> The Final Statement shall be prepared by Seller on the same basis that Subsection 3.1 requires Seller to use in preparing the Preliminary Statement, provided that the Seller agrees to prepare a reconciliation of physical inventory at Closing to the general ledger of the Business, such reconciling items as inventory received, not billed, inventory billed, not received, North East branch adjustments and other similar items requiring adjustments to such general ledger will be reflected on the Final Statement as an increase or decrease to the appropriate inventory category.

Based on Section 3.3 of the Agreement, AMCA calculated that Blue Tee owed an additional $492,000 for the inventory it had purchased. The claimed upward adjustment was primarily attributable to the fact that the physical inventory that took place after the Closing Date established that the value of the good inventory transferred to Blue Tee on a dollar for dollar basis was actually greater as of May 31, 1989 than the book values for such inventory reflected on the Preliminary Statement as of May 5, 1989.

Blue Tee challenged the computations set forth by AMCA and raised certain other issues not relevant here. After attempting unsuccessfully to resolve their differences, the parties submitted their disputes to Arthur, Andersen & Co. ("Arthur Andersen"), pursuant to Section 3.3 of the Agreement.

> Section 3.3 provides, in pertinent part:
> In the event that Buyer shall disagree with the computation of the Final Statement by Seller, each specific item of disagreement shall be set forth in writing by Buyer and delivered to Seller within thirty (30) days of the receipt by Buyer of the Final Statement. If Buyer and Seller shall not within the next fifteen (15) days resolve each such item of disagreement, both shall immediately refer those items to Price, Waterhouse & Co. (or, if such firm shall be unwilling or unable to act hereunder, Arthur, Andersen & Co., ...).

Buyer and Seller shall request that such accountants determine the matter in dispute within thirty (30) days subsequent to such referral, in accordance with the accounting methods and procedures referred to in this Section 3, and such determination shall be conclusive and binding on the parties hereto.

In addition to the method provided in Section 3.3, the Agreement contained another means for resolving disputes in Section 12.15. Section 12.15, which was not invoked by the parties in the arbitration before Arthur Andersen, contained a broad arbitration provision, which stated that "[a]ny dispute, controversy or claim arising out of or in connection with or relating to this Agreement or any breach or alleged breach thereof, shall be determined and settled by arbitration in New York under the rules of the American Arbitration Association."

In their joint letter engaging the services of Arthur Andersen (the "Engagement Proposal"), the parties made the following statement concerning the finality of any arbitration award rendered by Arthur Andersen:

> Pursuant to Section 3.3 of the Agreement, the parties request that Arthur Andersen resolve this dispute within 30 days of its acceptance of this engagement. To the extent that such a schedule cannot be met, the parties will seek to develop with the arbitrating partner a schedule for resolving the dispute by the end of 1989. Pursuant to the Agreement, Arthur Andersen's decision will be final and binding.

By letter agreement dated November 21, 1989 (the "Engagement Letter"), and executed thereafter by the parties, Arthur Andersen assigned an arbitrator to the matter, (the "Arbitrator"), and stated that:

> ... we will perform those procedures we deem appropriate to apply the express terms and conditions of the [A]greement to each of the disputed items indicated above, and to make a decision as an arbitrator on each issue.

Before the Arbitrator, AMCA reduced its claim from $492,000 to $395,000 based on its recognition of certain errors in computing the final purchase price. In support of its claim for $395,000, AMCA submitted evidence that during the last minute negotiations relating to the Preliminary Statement, the parties had agreed that, for valuation purposes, good inventory would be valued on a dollar for dollar basis and that no compensation would be paid to AMCA for any other inventory.

For its part, Blue Tee argued that the final purchase price was to be determined solely in accordance with the language of Section 3.1.1.1 of the Agreement, without regard to whatever understandings might have been reached between the parties during the course of their negotiations.

On March 30, 1990, Arthur Andersen issued its award directing AMCA to pay Blue Tee $878,000 plus interest from May 31, 1989 through the date of payment. Among Arthur Andersen's findings was that pursuant to Section 3.1.1.1 of the Agreement, the entire increase in the value of the good inventory should be offset by the decrease in the value of the other inventory for which, according to the adjustments to the Preliminary Statement, no money was to be paid.

In its letter of March 30 rendering the award, Arthur Andersen stated:

> Our decision relating to the inventory issue.... was based on our reading of Section 3.1.1.1 of the Asset Purchase Agreement. The evidence of both parties on this matter provided arguments regarding whether this Section should be interpreted as written or whether other actions of the parties provided evidence that there was a different intent of the parties for valuing the inventory. We have expressed our opinion on this issue based on a literal interpretation of the explicit wording of the Agreement and the accounting information. We were neither qualified nor engaged to interpret whether actions or closing schedules will result in a change contract.

In a letter of April 10, 1990, AMCA requested a reconsideration of the arbitration award by Arthur Andersen. Shortly thereafter, AMCA initiated an arbitration pro-

ceeding pursuant to Section 12.15 of the Agreement. The parties have agreed to stay this second arbitration pending the resolution of the instant motions.

*Discussion*

The parties' situation in relation to the Arthur Andersen arbitration is unique in that the Agreement contains two arbitration clauses, Section 12.15 and Section 3.3. Section 3.3 is the more specific clause, relating only to the valuation of certain inventory items as required pursuant to Sections 3.3 and 3.1 of the Agreement. As the parties in their Engagement Proposal agreed to arbitrate under Section 3.3, this opinion will consider the Arthur Andersen award only as it relates to that section, without expressing any opinion on other issues that might fall under the arbitration clause contained in Section 12.15 of the Agreement.

1.  AMCA's Motion to Vacate the Arbitration Award

Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9 (the "Act"), provides that, upon the satisfaction of certain conditions not at issue here, "the court must grant ... an order [confirming the arbitration award] unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11 of this title." The only relevant portion of these latter sections provides that the court "may make an order vacating the award ... (d) Where the arbitrators so exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(d). It is thus the court's duty to confirm the award unless § 10(d) precludes confirmation.

■ In order to be final, an arbitration award must be intended by the arbitrators to be the complete determination of all claims submitted to them. *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413 (2d Cir.1980). In order for a claim to be determined completely, the arbitrators must have decided "not only the issue of liability of a party on the claim, but also the issue of damages." *Id.* at 414, citing

*Puerto Rico Maritime Shipping Authority v. Star Lines Ltd.*, 454 F.Supp. 368, 373–74 (S.D.N.Y.1978).

■ The Arthur Andersen arbitration award meets the definition of finality under the standard enunciated in *Michaels*. The award clearly sets forth liability and assigns a dollar figure to such liability. Moreover, the arbitration award did not omit to decide any of the specific valuation issues set forth by the parties in the Engagement Proposal.

■ The only arguable omission by the Arbitrator was his failure to consider the issue of the hand-written adjustments to the Preliminary Statement that were the result of last minute negotiations by the parties on the eve of the signing of the Agreement on May 26, 1989. As the arbitration award stated, the Arbitrator considered only Section 3 of the Agreement in determining the liabilities under that section.

Such an omission does not make the award preliminary or otherwise not final. This "omission" is the result of the Arbitrator's decision to take a narrow approach to resolving the dispute, and is not analogous to the type of omissions which have caused courts in the past to vacate an award under § 10(d) of the Act. For example, in *Olympia & York Florida Equity Corp. v. Gould*, 776 F.2d 42 (2d Cir.1985), the Second Circuit remanded the case to the arbitrators because changed circumstances, i.e. respondent's bankruptcy, had rendered the terms of the award ambiguous as to petitioner's remedies. Here, AMCA is not alleging changed circumstances after the award, but merely that Arthur Andersen failed to base its decision on anything other than what was contained within the four corners of the Agreement.

In *Puerto Rico Maritime Shipping Authority v. Star Lines Ltd.*, 454 F.Supp. 368 (S.D.N.Y.1978), a case cited by AMCA as support for the proposition that courts will vacate an arbitration award where it is not final, the court deemed the arbitration not to be final where, as to some of the claims, the arbitrators did not assign exact dollar

figures to the liability. In the instant case, AMCA makes no claim that Arthur Andersen failed to make an exact determination of the dollar amount of the award; its claim is simply that Arthur Andersen made the wrong determination by not considering the issues presented by the last minute amendments.

Nor does the language contained in Arthur Andersen's letter announcing the award suggest that the award was intended to be anything other than final. The letter's reference to the Arbitrator's reliance on Section 3 of the Agreement, and to its refusal to consider any evidence other than the Agreement is an attempt by the Arbitrator to provide a rationale for his decision and not an attempt to question the opinion's finality. In addition, both parties knew of Arthur Andersen's intention to consider only the express terms of the Agreement from the Engagement Letter, which stated that, "we will perform those procedures we deem appropriate to apply the express terms and conditions of the [A]greement to each of the disputed items indicated above, and to make a decision as an arbitrator on each issue."

■ Moreover, the Arbitrator's refusal to consider the evidence of the hand-written adjustments to the Preliminary Statement does not constitute a refusal to hear evidence under § 10(c) of the Act. "In handling evidence an arbitrator need not follow all the niceties observed by the federal courts. He need only grant the parties a fundamentally fair hearing." *Capital District Chapter v. International Brotherhood of Painters*, 581 F.Supp. 840, 845 n. 9 (N.D.N.Y.1983). "Only the most egregious error which resulted in adversely affecting the rights of a party would justify the application of [§ 10(c) ] and require vacatur of the award." *Hunt v. Mobil Oil Corp.*, 654 F.Supp. 1487, 1512 (S.D.N.Y. 1987) (holding arbitrators' alleged refusal to give certain evidence the "consideration it deserved" does not require vacation of award).

■ Finally, it is the Second Circuit's policy to read very narrowly courts' authority to vacate arbitration awards pursuant to the Act. *John T. Brady & Co. v. Form-Eze Systems, Inc.*, 623 F.2d 261, 263 (2d Cir.1980), *cert. den.*, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980); *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 703 (2d Cir.1978). "The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes ...". *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir.1980).

2. Blue Tee's Motion for Rule 11 Sanctions

■ Blue Tee has also moved for sanctions to be imposed against AMCA pursuant to Rule 11, Fed.R.Civ.P. Rule 11 requires an attorney to make a "reasonable inquiry" to determine that pleadings and motions are "well grounded in fact" and "warranted by existing law" or constitute "a good faith argument for the extension, modification, or reversal of existing law," and that they are not interposed for the purpose of harassment or delay.

According to the Court of Appeals for the Second Circuit:

> If the inquiry was objectively reasonable under the circumstances and disclosed a reasonable factual basis for the claim, then sanctions are not appropriate. On the other hand, if the attorney either failed to make an objectively reasonable inquiry or pursued a claim for which no basis was disclosed by such an inquiry, then sanctions are appropriate.

*Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1470 (2d Cir.1988), *rev'd in part, Pavelic & LeFlore v. Marvel Entertainment Group*, — U.S. —, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

AMCA made a reasonable legal argument for its motion, citing case law by which it could be argued that the Arthur Andersen arbitration was really only a valuation proceeding and therefore only a step in the arbitration process and not a final decision. AMCA's motion, therefore, does not reach the threshold required by the Second Circuit that it be "patently clear that the claim has absolutely no chance of success under the existing precedents, and

where no reasonable argument can be advanced to extend, modify, or reverse the law as it stands...." *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Denial of a motion does not in and of itself give rise to a Rule 11 Sanction. *See id.* at 252–54.

*Conclusion*

For the reasons set forth above, AMCA's motion is denied, and Blue Tee's petition to confirm the arbitration award is granted. Blue Tee's motion for Rule 11 sanctions is denied.

It is so ordered.