BLUE TEE CORP., Plaintiff,

v.

KOEHRING COMPANY and United Dominion Industries, Inc. (formerly AMCA International Corporation), Defendants.

No. 92 Civ. 4898 (RWS).

United States District Court, S.D. New York.

Dec. 8, 1992.

Wolff & Samson, P.A., Roseland, NJ, for plaintiff; Ronald G. Blum, Kavanagh Peters Powell & Osnato, New York City, of counsel.

Lord Day & Lord, Barrett Smith, New York City, for defendants; Warren H. Colodner, Gail Kamnitz, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Blue Tee Corp. ("Blue Tee") has moved to set aside an arbitration award in favor of defendant Koehring Company and United Dominion Industries Inc. (formerly AMCA INTERNATIONAL CORPORATION) (hereinafter "AMCA") which has cross-moved to enforce the award. The cross motion is granted, and judgment will be entered enforcing the award.

*Prior Proceedings*

The underlying transaction between these parties pertained to a May 26, 1986 Asset Purchase Agreement (the "Agreement") between AMCA and Blue Tee whereby Blue Tee agreed to purchase all of the inventory—principally drilling rig inventory—owned by AMCA's Speedstar Division, as well as other categories of assets such as leases, computer software, business know-how and the goodwill of the Speedstar business. Blue Tee also agreed to assume certain of Speedstar's liabilities.

From the outset this transaction included a price adjustment mechanism built into the Agreement, which was to be predicated upon accounting data contained in the books, records and balance sheets of AMCA's Speedstar Division. In that respect, this transaction was typical of purchase agreements relating to ongoing businesses wherein a purchase price for identifiable assets is fixed as of a given date, subject to a later price adjustment to account for any upward or downward movement in the value of assets (*i.e.*, the seller's continued sale and purchase of inventory prior to the closing).

What was atypical about this transaction, as this Court observed in *Blue Tee Corp. v. Koehring Co.*, 754 F.Supp. 26 (S.D.N.Y. 1990) (*"Blue Tee I"*), was the presence of two separate arbitration clauses in the Agreement—one "general" for contract interpretation disputes and one "specific" for valuation purposes:

> The parties' situation in relation to the Arthur Andersen arbitration is unique in that the Agreement contains two arbitration clauses, Section 12.15 and Section 3.3. Section 3.3 is the more specific clause, relating only to the valuation of certain inventory items as required pursuant to Sections 3.3 and 3.1 of the Agreement.

*Id.*, 754 F.Supp. at 30.

The "general clause" by its literal terms purported to reach "any dispute" relating to the Agreement, as follows:

> Any dispute, controversy or claim arising out of or in connection with or relating to this Purchase Agreement or any breach or alleged breach hereof, shall be determined and settled by arbitration in the City of New York pursuant to the rules then in effect of the American Arbitration Association.

Agreement, § 12.15. *See* Blue Tee Pet., Ex. A.

Accordingly, in the event that the parties could not agree upon computation of the final adjustments, § 3.3 mandated that the resulting computation dispute would be resolved through arbitration before an accounting firm, notwithstanding the existence of the "general" arbitration clause which was not intended for resolution of the technical accounting issues reserved for accountant-arbitrators. *Compare* § 12.15 *with* § 3.3; *see* Blue Tee Pet., Ex. A at 4–5 for the full text of those clauses.

In submitting their items of disagreement to Arthur Andersen in 1989, each side explicitly reserved its right to pursue any other claims in an appropriate forum. Arthur Andersen found in favor of AMCA on several specific accounting issues and also determined that under a "literal interpretation" of Section 3.1.1.1 of the Agreement, AMCA was required to pay Blue Tee $878,-000 plus interest. But Arthur Andersen also expressly disclaimed any competence or authority to decide whether, as argued by AMCA, the parties, by their "actions or closing schedules," had evidenced an intention to adopt a valuation procedure other than one which would be dictated by Blue Tee's view of the meaning of the literal language of Section 3.1.1.1. More specifically, Arthur Andersen stated:

> Our decision relating to the inventory issue 1(a) in the Blue Tee objections was based on our reading of Section 3.1.1.1 of the Asset Purchase Agreement. The evidence of both parties on this matter provided arguments regarding whether this Section should be interpreted as written or whether other actions of the parties provided evidence that there was a different intent of the parties for valuing the inventory. We have expressed our opinion on this issue based on a literal interpretation of the explicit wording of the Agreement and the accounting information. We were neither qualified nor engaged to interpret whether actions or closing schedules will result in a change contract.

In *Blue Tee I*, this Court concluded that it was compelled to confirm the Arthur Andersen "findings" because they constituted a "final and definite" award within the meaning of the Federal Arbitration Act (the "FAA"). *See* 754 F.Supp. at 31.

In this Court's second opinion related to this controversy, dated May 13, 1991, this Court declined to exercise its discretionary

power to stay enforcement of the proposed judgment because AMCA had "failed to demonstrate any extraordinary circumstances justifying a stay or any undue hardship it [would] suffer ...," *Blue Tee Corp. v. Koehring Co.,* 763 F.Supp. 754, 757 (S.D.N.Y.1991) (*"Blue Tee II"*), and stated with respect to the parties' disagreements:

> concerning the nature and intended effect of various last minute [U]nderstandings pertaining to inventory valuations [was] a "controversy ... arising out of or in connection with or relating to" the Purchase Agreement though not part of the Section 3.1.1.1 arbitration conducted by Arthur Andersen.

*Id.* at 756. Finally, the question remaining for the AAA arbitrators was posed in the following terms:

> whether the literal terms of Section 3.1.1.1 standing alone constitute the complete agreement of the parties and should govern, or whether a dispute exists with respect to contract interpretation that involves determining the intention of the parties as evidenced by their words and deeds at the time they entered into their contract in light of the parties' conduct in setting the preliminary price and amending the Preliminary Statement of the Purchase Agreement.

*Id.*

In the aftermath of this Court's *Blue Tee II* decision, AMCA and Blue Tee negotiated the terms of an amended judgment and AMCA paid Blue Tee the full amount of that judgment on June 27, 1991.

The American Arbitration Association (the "AAA") arbitration was held pursuant to: (i) a broad arbitration clause contained in Section 12.15 of the Agreement, dated May 26, 1989; [1] and (ii) the order of this court, dated May 13, 1991, which granted AMCA's motion to compel arbitration under Section 12.15 of certain issues left unresolved by an earlier arbitration which had been conducted before Arthur Andersen under the arbitration clause set forth in Section 3.3 of the Agreement. [2]

Pursuant to these orders, a second arbitration was held and an award in favor of AMCA in the amount of $1,472,137.62, plus interest on June 22, 1992. The motion and cross motion were fully submitted on September 23, 1992.

*The AAA Arbitration*

AMCA presented evidence of the parties' understandings as to how the final purchase price should have been determined. Blue Tee challenged that evidence and asserted various counterclaims.

The AAA arbitrators concluded that:

(i) A dispute existed with respect to the interpretation of the Purchase Agreement;

(ii) they were empowered by Section 12.15 to resolve such dispute;

(iii) Blue Tee owes AMCA $395,000 plus interest pursuant to Sections 3 and 4 of the Purchase Agreement (precisely the same amount which AMCA had sought during the Arthur Andersen arbitration);

(iv) Blue Tee should return the $1,077,-137.62 (plus interest) which it received from AMCA as a result of Blue Tee's enforcement of the Arthur Andersen award; and

(v) Blue Tee's counterclaims should be denied in their entirety.

*The AAA Arbitrators Did Not Exceed Their Authority*

It is well settled in this circuit that "confirmation of an arbitration award is a summary proceeding that merely makes what

---

1. Section 12.15 provides, in relevant part:

   Any dispute, controversy or claim arising out of or in connection with or relating to this Agreement or any breach or alleged breach thereof, shall be determined and settled by arbitration in the City of New York pursuant to the rules then in effect of the American Arbitration Association.

2. In marked contrast to the broad language of Section 12.15, arbitration under Section 3.3 was more confined, covering only the resolution of specific items of disagreement with respect to a statement of assets and liabilities (the "Final Statement") which AMCA delivered to Blue Tee after the closing as part of the procedure used to set the final purchase price. *See* Blue Tee Pet. ¶ 8.

is already a final arbitration award a judgment of the court." *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir.1987) (*quoting Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984)).

The Second Circuit has repeatedly declared that Section 10(d), upon which the Petition is premised, is to be accorded the "narrowest of readings." *See, e.g., Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 703 (2d Cir.1978); *Warnaco v. Sincere Garment & Sporting Goods Mfg. Co.*, No. 90 Civ. 2854 (RJW), 1992 WL 77645, at *1, 1992 U.S. Dist. LEXIS 3440, at *5 (S.D.N.Y. Mar. 20, 1992); *Orlogin, Inc. v. U.S. Watch Co.*, No. 90 Civ. 1106 (RJW), 1990 WL 364470, at *3, 1990 U.S. Dist. LEXIS 7794, at *9 (S.D.N.Y. June 25, 1990); *Mobil Oil Indonesia, Inc. v. Asamera Oil (Indonesia), Ltd.*, 487 F.Supp. 63, 65 (S.D.N.Y.1980).

■ Moreover, since Blue Tee is the party seeking to vacate the AAA Award, Blue Tee bears the burden of proof that the AAA arbitrators exceeded their authority. *See Andros Compania Maritima*, 579 F.2d at 700; *Warnaco*, 1992 WL 77645, at *2, 1992 U.S. Dist. LEXIS 3440, at *5; *Orlogin*, 1990 WL 364470, at *5, 1990 U.S. Dist. LEXIS 7794, at *9.

■ Blue Tee's stated position is that the parties agreed "to settle any dispute as to the Purchase Price by arbitration before an expert arbitrator[, *i.e.*, a CPA]" in accordance with Section 3.3 of the Agreement. According to Blue Tee, the AAA panel was only empowered to decide issues of "contract interpretation" affecting the purchase price, but was proscribed from giving any quantitative effect to their "interpretation." Such an effect, Blue Tee argues, could only be given by a CPA. Thus, when the AAA panel quantified its award, they supposedly usurped the responsibility and function which the parties had reserved for an "expert" arbitrator.

■ However, Blue Tee's contention that Section 3.3 precludes arbitrators appointed under Section 12.15 from determining the final purchase price is a matter of contract interpretation. As such, it was an issue for the AAA arbitrators. Arbitrators have broad authority to interpret the contracts they apply, and the AAA panel's interpretation of the Agreement is not subject to challenge in this Court. *See Agarwal v. Agarwal*, 775 F.Supp. 588, 591 (E.D.N.Y. 1991); *aff'd without op.*, 969 F.2d 1041 (2d Cir.1992).

■ Section 12.15 provides for both the determination and settlement of any dispute related to the Purchase Agreement. Furthermore, the AAA arbitrators are empowered to render a final and binding award enforceable in a court of competent jurisdiction. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 41, 108 S.Ct. 364, 372, 98 L.Ed.2d 286 (1987).

Section 3.3 simply provided a means for resolving specific items of disagreement regarding the computations of assets and liabilities reflected on an accounting statement (the Final Statement) which AMCA was required to prepare. Nothing in the language of Section 3.3 states or implies that the dispute mechanism set forth therein had to be used to determine every issue affecting the purchase price.

Mr. Cordle's letter of April 19, 1990 on behalf of AMCA, in which he suggested referring issues to the accountant, did not and could not define the scope of the AAA panel's authority. That function was the province of the parties' contract or submission. *See Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir.1992).

Blue Tee has cited *American Silk Mills Corp. v. Meinhard–Commercial Corp.*, 35 A.D.2d 197, 315 N.Y.S.2d 144 (1st Dep't 1970), for the proposition that a specific limit to a broad arbitration clause is effective. There, the First Department ruled that since no reference at all had yet been made to an accounting firm, the seller's attempt to initiate a general arbitration was premature.

In contrast to the facts of *American Silk*, AMCA submitted its dispute with Blue Tee over the purchase price to Arthur Andersen and sought to persuade Arthur Andersen that it should not disclaim au-

thority or competency to resolve the effect of the Understandings. Thus, the AAA arbitration was in no sense premature. When Arthur Andersen declined to decide the effect of the Understandings, AMCA invoked the broad arbitration provision of Section 12.15. Blue Tee has acknowledged that AMCA was entitled to invoke that clause.

While Blue Tee seeks to give an expansive reading to the narrow arbitration clause of Section 3.3, at the same time, Blue Tee seeks to give a restrictive reading to the broad arbitration clause of Section 12.15. One of the other cases cited by Blue Tee, *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825 (2d Cir.1988), illustrates the fact that narrow arbitration clauses cannot be read expansively, even if the literal language of the clause conceivably could encompass the result sought to be achieved by an expansive reading. As in *McDonnell Douglas,* the overall context of the parties' narrow arbitration clause indicates that Section 3.3 was only applicable to the precise procedural context in which it was invoked. Nothing in either Section 3.3 or Section 12.15 establishes that once a proceeding is validly commenced under Section 12.15 the arbitrators cannot deal with accounting issues but must defer to Arthur Andersen.

 While the AAA arbitrators did not explicitly specify how they calculated their award, they need not have done so. Arbitrators are not required to explain their rationale for an award. *See Koch Oil, S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir.1985). Nor are they required to state the factual or legal grounds upon which their award is based. *See e.g., John T. Brady & Co. v. Form–Eze Sys., Inc.,* 623 F.2d 261, 264 (2d Cir.), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980); *Kurt Orban Co. v. Angeles Metal Sys.,* 573 F.2d 739, 740 (2d Cir.1978); *Cobec Brazilian Trading and Warehousing Corp. v. Isbrandtsen,* 524 F.Supp. 7, 9 (S.D.N.Y.1980). Moreover, "[a]n award must be confirmed ... where the true intent of the arbitrator is appar-

ent," *American Centennial Ins. Co. v. Arion Ins. Co.,* No. 88 Civ. 1665 (RWS), 1990 WL 52295, at *5, 1990 U.S. Dist. LEXIS 4209, at *14 (S.D.N.Y. Apr. 13, 1990); *see also Fischer v. CGA Computer Assocs., Inc.,* 612 F.Supp. 1038, 1041 (S.D.N.Y. 1985)), or if the grounds for it can be inferred from the facts of the case, *see Kurt Orban,* 573 F.2d at 740; *American Centennial,* 1990 WL 52295, at *5, 1990 U.S. Dist. LEXIS 4209, at *12; *Maidman v. O'Brien,* 473 F.Supp. 25 (S.D.N.Y.1979).

Since the AAA Award in this case was based upon the issues presented to the AAA panel, the calculations provided as to the parties' respective damage claims, and the evidence of the parties' Understandings, the AAA Award must be confirmed.

*Conclusion*

Based on the reasons set forth above, the petition to vacate the award will be dismissed, the AAA award will be confirmed and judgment will be entered accordingly on notice.

It is so ordered.