FIRST INTERREGIONAL EQUITY
CORPORATION, a New Jersey
Corporation, Plaintiff,

v.

Gabriel F. HAUGHTON, an individual,
Gerald H. Cahill, an individual, Victor
Lombardi, an individual, Stanley
Schwartz, an individual, Merlin Baines
& Co., Inc., a Delaware Corporation,
Otra Clearing, Inc., a wholly-owned sub-
sidiary of Otra Securities Group, Inc., a
Delaware Corporation, John Whiteside,
an individual, Hassan Growney Co., for-
merly doing business as Castleton–
Rhodes, Inc., a New York Corporation,
Gateway Bank, a Connecticut Corpora-
tion, Raymond T. Bogert, an individual,
Jules Lipow, an individual, and Warren
Schreiber, an individual, Defendants.

In the Matter of the Arbitration Between
FIRST INTERREGIONAL EQUITY
CORPORATION, Claimant,

v.

OTRA CLEARING, INC., now known as
Reynolds Kendrick Stratton, Inc., Wil-
liam R. Stratton, David Phillips and
John Whiteside, Respondents.

No. 91 Civ. 0143 (RWS).

United States District Court,
S.D. New York.

Jan. 24, 1994.

Patterson, Belknap, Webb & Tyler, New York City by Stephen P. Younger, Saul B. Shapiro, of counsel, for plaintiff.

Anderson Kill Olick & Oshinsky, P.C., New York City by Robert M. Horkovich, of counsel, for respondent Otra Clearing, Inc.

## OPINION

SWEET, District Judge.

Respondents OTRA Clearing, Inc., John Whiteside, William Stratton, and David Phillips (collectively "OTRA") have moved pursuant to 9 U.S.C. § 10 to vacate an arbitration award entered June 8, 1993 by an arbitrator appointed by the National Association of Securities Dealers, Inc. ("NASD") in the NASD arbitration styled *First Interregional Equity Corp. v. OTRA Clearing, et al.,* Case Number 92–02159. Claimant First Interregional Equity Corporation ("FIEC") has cross-petitioned pursuant to 9 U.S.C. § 9 for orders confirming the award, directing that judgment be entered upon the award against the OTRA respondents, and granting costs. For the reasons that follow, OTRA'S petition to vacate the award is denied; FIEC's petition for orders confirming the award and directing that judgment be entered upon the award is granted with interest from the date of the award; and FIEC's claim for costs is denied.

### The Parties

The parties, prior proceedings, and facts in this case, described briefly below, have been thoroughly discussed in prior opinions of this Court, familiarity with which is assumed. *See* 1992 WL 111350, 1992 U.S.Dist.LEXIS 6281 (S.D.N.Y. May 1, 1992); 805 F.Supp. 196 (S.D.N.Y.1992); 1993 WL 361576, 1993 U.S.Dist.LEXIS 12813 (S.D.N.Y. Sept. 14, 1993).

FIEC is a New Jersey corporation with its principal place of business in Short Hills, New Jersey. It is a broker-dealer licensed by the Securities Exchange Commission and is a member of NASD.

Respondent OTRA Clearing, Inc. ("OTRA"), a wholly-owned subsidiary of OTRA Securities Group, Inc., a Delaware corporation, is a member of NASD. Respondents Whiteside, Stratton, and Phillips are officers or former officers of OTRA.

### Prior Proceedings

FIEC filed its first Complaint, alleging securities fraud, on December 28, 1990, but did not serve any of the Defendants at that time. It filed its First Amended Complaint on April 16, 1991.

Default judgments were granted by memo endorsement dated January 20, 1993, against certain of the original defendants. Claims against defendants OTRA and Whiteside were stayed by this Court pending arbitration before the NASD. After a hearing before this body, the arbitration panel rendered an award in FIEC's favor on June 8, 1993, in the amount of $231,500.

The present motions were filed on July 16, 1993, and argument was heard upon them on September 15, 1993. On September 27, 1993, attorneys for FIEC submitted by letter to the court copies of two cases, *Neuberger & Berman v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 16853/91 (N.Y.Sup.Ct.1991), and *Wing v. J.C. Bradford & Co.*, 678 F.Supp. 622 (N.D.Miss.1987). Respondents, by their attorneys, submitted a memorandum of law in response to FIEC's September 27 letter on September 30, 1993. This motion was considered fully submitted as of September 30, 1993.

*Facts*

The Defendants are alleged to have participated in a scheme to defraud FIEC involving the manipulation the price of shares of Merlin Baines common stock, a "penny stock." The facts of the alleged scheme were more fully stated in the prior opinions, but for clarity's sake a certain amount of repetition is necessary.

On December 13, 1989, FIEC's representative Lawrence Doherty ("Doherty") allegedly received a phone call from one Victor Lombardi in which Lombardi stated that he and a number of other persons intended to execute a trade under SEC Rule 144, 17 C.F.R. § 230.144.[1] Doherty told Lombardi that he would not execute the trade until certain required Rule 144 paperwork was complete.

Lombardi called Doherty again on December 18, 1989, to discuss this paperwork further, and to introduce one Gerald H. Cahill, whom he described as his business partner, to Doherty. The following day, FIEC received restricted stock certificates, Merlin Baines's 10K and 10Q reports, account information, and other Rule 144 paperwork from the shareholders. FIEC first learned that the security involved was Merlin Baines common at that time.

On December 20, 1989, Doherty told Cahill and Lombardi that FIEC needed legal opinions stating that the stock being offered complied with Rule 144. Cahill and one Stanley Schwartz, who was identified as Merlin Baines's corporate counsel, called Doherty and assured him that legal opinions would be delivered that afternoon. Later that day, Schwartz FAXed a single legal opinion letter to Doherty. Doherty, in turn, sent the letter to Alex Brown & Sons, FIEC's clearing broker. Alex Brown rejected the letter, informing FIEC that a group letter was not appropriate, but instead that a separate Rule 144 legal opinion letter was required from each individual shareholder who was selling stock. Doherty called Schwartz and told him of this development.

On December 21, 1989, FIEC received FAX copies of additional Rule 144-related paperwork. Believing the paperwork to be in order, FIEC sold 2,100,000 shares of Merlin Baines stock at $0.02625 per share and 588,000 shares at $0.00105 per share on December 21.

On December 22, 1989 Doherty informed Schwartz and Cahill that original copies of the opinion letters had to be sent to Alex Brown by December 28, the settlement date. Schwartz and Cahill assured Doherty that they would send the letters to FIEC immediately, though by December 27, 1989, FIEC still had not received the letters.

On January 8, 1990, Alex Brown notified FIEC that OTRA had issued an intent to "buy-in" the shares sold by FIEC on December 21. OTRA was allegedly acting as an agent for the purchaser of the stock and issued the notice because FIEC could not deliver unrestricted shares without original copies of the legal opinion letters. Upon learning this, Doherty immediately telephoned Lombardi, Schwartz, and one Jules Lipow and told them that the opinion letters were needed to avoid the buy-in. Doherty

---

1. SEC Rule 144 governs certain sales of unregistered securities, and its provisions are designed to prevent distributions of stock without the public disclosure of financial information.

was allegedly assured that FIEC would receive the letters before the buy-in was executed.

This apparently never happened. FIEC asked OTRA to delay the buy-in pending receipt of the opinions. There was evidence at the NASD hearing to the effect that industry practice called for OTRA to give FIEC a brief extension of time.

Alex Brown notified FIEC that OTRA bought-in 700,000 shares of Merlin Baines at $0.50 per share. FIEC paid Alex Brown $350,000 to satisfy the buy-in. FIEC alleged at the NASD hearing that OTRA shared its profits from the buy-in with others who, FIEC claims, participated with OTRA in the fraudulent scheme to profit from the manipulation of Merlin Baines stock.

### Discussion

■ The confirmation of an arbitration award is a summary proceeding that converts a final arbitration award into a judgment of the court. *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir.1987). A party moving to vacate the arbitration award has the burden of proof, *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 700 (2d Cir.1978), and the showing required to avoid confirmation is very high, *Ottley*, 819 F.2d at 376.

■ It is the Second Circuit's policy to read very narrowly the courts' authority to vacate arbitration awards pursuant to Section 10 of the FAA. *Blue Bell Inc. v. Western Glove Works, Ltd.*, 816 F.Supp. 236, 240 (S.D.N.Y.1993); *Blue Tee Corp. v. Koehring Co.*, 808 F.Supp. 343, 346 (S.D.N.Y.1992), *aff'd*, 999 F.2d 633 (2d Cir.1993). Any "colorable justification" will support an arbitral award. *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991), *and cert. denied*, — U.S. —, 112 S.Ct. 1241, 117 L.Ed.2d 474 (1992).

■ A district court must grant a petition to confirm an arbitration award that is properly brought unless one of the bases for vacating or modifying the award is established. *Ottley*, 819 F.2d at 376. The statutory bases for vacating, set forth in the Federal Arbitration Act, are the following:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made....

9 U.S.C. § 10(a).

■ In addition to the statutory grounds set forth in the Federal Arbitration Act, an award will be vacated if it is deemed to be in manifest disregard of the law. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986).

OTRA first argues that Ronald Curry, one of the arbitrators, was evidently prejudiced against OTRA's counsel, Jeffrey A. Tew, which appears to be an argument for vacation pursuant to 9 U.S.C. § 10(a)(2) ("Subsection 2"). The basis for this argument is a transcribed statement by Curry, allegedly made in a closed door conference among the Panel members to consider OTRA's request for scheduling certain arbitration sessions, which conference Curry allegedly believed was not being taped. Curry's statement was as follows:

Let me tell you about Kirkpatrick & Lockhart. Mr. Tew's firm has offices in Boston, Harrisburg, Pittsburgh, Washington, and Miami. [Tew's] happens to be in Miami. Why is it that the one lawyer they use is 1,200 miles away. Everyone of these others is somewhere between 120 and 300 miles away.... [S]o his inconvenience is irrelevant and the holiday [Mother's Day] is irrelevant.

(Trans. at 480.)

■ In *International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548 (2d Cir.), *cert. de-*

*nied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981), the Second Circuit reversed a district court's vacation of an arbitration award predicated upon the fact that one of the arbitrators was a non-party witness in a suit between parties who were represented by the same law firms that were appearing before him in arbitration. The Circuit Court held that a party seeking to vacate an award under Subsection 2 must show more than an appearance of bias. Arbitrators are, therefore, held to a lower standard of impartiality than Article III judges. *International Produce,* 638 F.2d at 552; *see also Cook Chocolate Co., Div. of World's Finest Chocolate, Inc. v. Salomon Inc.,* 748 F.Supp. 122, 126, 128 (S.D.N.Y.1990).

Although discerning bias perforce requires a fact-bound inquiry, two observations of the Second Circuit in *International Produce* are relevant here. First, the Circuit Court pointed out that arbitrators are typically chosen from among those who are deeply involved in the legal community concerned with the subject matter of the dispute. It is to be expected, therefore, that arbitrators will have had experience with the firms that represent the parties to the arbitration. *International Produce,* 638 F.2d at 551–52. The court also stated that an arbitrator's personal feelings in favor of or against one attorney would not necessarily be transferred to another attorney in the same firm. *International Produce,* 638 F.2d at 551 n. 3.

In *Cook,* this Court considered whether a series of acrimonious exchanges between the arbitrators and the attorneys for one of the parties were a sufficient ground for vacating the award. The Court concluded that "in a proceeding overseen not by professional judges, who are trained to preserve a neutral appearance, but by ordinary businessman, the disputes between the panel and counsel ... do not confirm bias such as would warrant vacating the award."

■ OTRA has not met its burden of demonstrating that Curry was biased against Tew. Curry's statement seems to indicate, rather than bias against Tew, sympathy for Tew for the fact that his firm had apparently disregarded his convenience and his filial obligations. It is unavoidable that arbitrators will have developed opinions regarding the various law firms that they come in contact with, and there is no reason, without more evidence, to assume that they would transfer negative feelings regarding a firm to each of the firm's members or associates. Curry's statement does not even indicate an "appearance of bias" and, as the Second Circuit held in *International Produce,* such a showing would be inadequate as a grounds for vacating the award.

OTRA's also argues that the Award must be vacated pursuant to 9 U.S.C. § 10(a)(4) ("Subsection 4") because the arbitration panel exceeded and imperfectly executed their powers by ruling on issues not presented to them. They premise this argument on a quotation fragment from the "Case Summary" section of the Award that states:

> Claimant further alleged that Respondents induced Claimant to sell shares of Merlin Baines Stock, then artificially inflated the price of the stock [and] obstructed Claimant's ability to deliver the stock....

OTRA claims that FIEC did not allege or present evidence that they were involved in the sales of Merlin Baines stock or in the manipulation of Merlin Baines stock prices. They claim that this paragraph of the Award indicates that the arbitrators ruled on issues not presented to them, thus exceeding their authority.

The Second Circuit has indicated that Subsection 4 should be accorded the "narrowest of readings." *Blue Tee Corp. v. Koehring Co.,* 999 F.2d 633, 634 (2d Cir.1993). OTRA bears the burden of proof to show that the arbitrators exceeded their authority. *Blue Tee Corp. v. Koehring Co.,* 808 F.Supp. 343, 346 (S.D.N.Y.1992); *see also Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691, 700 (2d Cir.1978).

OTRA signed an arbitration agreement stipulating to have "any claims in [this] matter arbitrated before the NASD." OTRA also signed a Submission Agreement agreeing to submit "the present matter in controversy, *as set forth in the attached statement of claim* ... to arbitration in accordance with" NASD rules (emphasis added). OTRA agreed "to abide by and perform any

award(s) rendered pursuant to [its] Submission Agreement and further agreed[d] that a judgment and any interest due thereon may be entered upon such award(s). . . ."

In its Statement of Claim, FIEC describes the alleged fraud:

At its simplest level, the fraud involved: (1) inducing FIEC to sell shares of Merlin Baines ... stock; (2) artificially inflating the price of the stock; (3) obstructing FIEC's ability to deliver the stock; and (4) forcing FIEC to cover the costs of a buy-in at an artificially high price.

FIEC's Statement of Claim further elaborated on this general scheme by describing OTRA's role in the fraud:

This complex scheme required the collaboration of multiple parties, each of whom played a significant role in ensuring the scheme's success. OTRA's participation was critical: OTRA effected the buy-in, charged excessive markups, refused to reverse the buy-in even though informed of FIEC's exposure to the fraud, and altered records to ensure the fraud's success.

The full paragraph from the "Case Summary" section of the award, of which OTRA quoted only a fragment in its papers, reads as follows:

Claimant alleged that in January 1990 Respondent OTRA Clearing, Inc., executed a buy-in against Claimant, which in fact was the denouement of a well crafted scheme orchestrated by Respondents to defraud Claimant. Claimant further alleged that Respondents induced Claimant to sell shares of Merlin Baines Stock, then artificially inflated the price of the stock., obstructed Claimant's ability to deliver the stock, and forced Claimant to cover the costs of a buy-in at an artificially high price. Claimants alleged that Respondent OTRA Clearing, Inc. through Respondents Stratton and Phillips, General Securities Principals of OTRA and Respondent Whiteside, President of OTRA, effected the buy-in, charged excessive markups, refused to reverse the buy-in even though informed of Claimant's exposure to the fraud and altered records to ensure the fraud's success. Claimant alleged that Re-

spondents actions resulted in $335,000.00 in damages.

The gist of OTRA's argument is that the Award misstates FIEC's allegations because the arbitrators' use of the generic term "Respondents" to describe additional unnamed participants in the fraud suggests that they considered that OTRA was involved in all facets of the fraud.

█ Under the Federal Arbitration Act, an arbitration award must be confirmed " 'where the true intent of the arbitrator is apparent' " or "if the grounds for [the award] can be inferred from the facts." *Blue Tee,* 808 F.Supp. at 347 (citations omitted); *see also Barbier v. Shearson/Lehman Hutton, Inc.,* 948 F.2d 117, 120–21 (2d Cir.1991).

█ The language of the award establishes that the panel was aware that OTRA's role in the four-stage fraud was the execution of the buy-in. When the panel referred to the OTRA respondents' roles it noted specifically whom it referred to by modifying "Respondents" with specific party names. While one could wish for more clarity of expression in phrasing the Award, this criticism is far below the showing required to vacate an award pursuant to Subsection 4.

█ "Manifest disregard" of the law is a nonstatutory ground for vacating an arbitration award which is also addressed. Although the limits of this ground have never been defined, manifest disregard of the law means more than error or misunderstanding with respect to the law. The arbitrator must appreciate the existence of a clearly governing, well defined, explicit legal principle and decide to ignore or pay no attention to it. This standard does not allow a court to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it. As the Second Circuit has indicated, any less strict standard of review would "undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986). As a result, judicial review under the manifest disregard standard is "extremely limited."

*Id.* at 934. It is not enough to show even "an arguable difference regarding the meaning or applicability of laws urged upon" the arbitration panel. *Id.* Rather, to set aside an award, OTRA must establish that the arbitrators understood the terms and applicability of clearly governing legal principles and "deliberately ignored them in making their award...." *Id.* at 933. Finally, OTRA must show that the panel based their award on this error. *Wall St. Assocs., L.P. v. Becker Paribas, Inc.,* 818 F.Supp. 679, 686 (S.D.N.Y.1993).

OTRA's first claim is that the arbitrators ignored the principle that there is no private right of action for violations of the NASD rules. As support for this argument, they cite FIEC's Statement of Claim against OTRA alleging violations of the NASD rules, and reproduce fragments of colloquies in the transcript where FIEC's attorney's referred to the NASD rules.

The award, however states that OTRA's actions were the "denouement of a well crafted scheme ... to defraud Claimant," that they "refused to reverse the buy-in even though informed of ... the fraud" and that they "altered records to ensure the fraud's success." The only time that the Award mentions the NASD rules is in rejecting OTRA's defenses based on these rules. From the face of the Award it is evident that it is based upon FIEC's claims of fraud. OTRA has not met its burden of showing that the panel ignored the fact that there is no private cause of action under the NASD rules or that the panel based their award on this error.

OTRA next claims that the Award was in manifest disregard of the law because it ignored the fact that they did not violate any rules by refusing to grant an extension of time before the buy-in. OTRA claims that the panel ignored the "well-settled law" that OTRA can not be liable to FIEC for properly exercising its legal rights.

Despite the "well-settled" nature of this "law," OTRA fails to cite a single case in its support from this Circuit. This fact might indicate that this is not a clearly governing legal principle of which the arbitrators understood the terms and applicability.

More relevant to the present case is the proposition that following procedural rules often does not immunize a party from claims of fraud. *See Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 835 F.2d 1031, 1036 (3d Cir.1987) (broker-dealer's compliance with disclosure rules under SEC Rule 10b–10 does not bar securities fraud claim); *Siemens Info. Sys., Inc. v. TPI Enters., Inc.,* 1992 WL 51559, 1992 U.S.Dist.LEXIS 3018 (S.D.N.Y. March 12, 1992) (accountant's compliance with GAAP rules does not preclude liability for securities fraud). OTRA has not born its burden of demonstrating that the arbitrators ignored a well-settled principle of law, rather than heard testimony upon an arguable difference of opinion regarding the meaning or applicability of laws urged upon them, and decided the case in favor of FIEC.

OTRA also asserts that the arbitrators manifestly disregarded the law by finding that OTRA was liable for aiding and abetting a securities violation. OTRA also argues that this finding should be vacated because it indicates that the panel "acted arbitrarily and capriciously and without fundamental rationality." (OTRA Mem. at 10.)

In support of their assertion that this Court has the power to vacate an arbitration award if it is arbitrary and capricious or irrational, OTRA cites *Lyeth v. Chrysler Corp.,* 929 F.2d 891 (2d Cir.1991). *Lyeth,* however, involved a compulsory arbitration under New York's Automobile Lemon Law. Relying on New York State interpretations of the Lemon Law, the Second Circuit held that when litigants are ordered to arbitration, they are entitled to receive judicial review under the arbitrary and capricious standard enunciated in N.Y.C.P.L.R. Article 78 for review of actions by government officials. *Lyeth,* 929 F.2d at 895–96. There is no indication in *Lyeth* that this standard should apply to voluntary arbitration procedures before this Court.

The question of whether arbitration awards can be rejected under an arbitrary and capricious standard was directly considered by this Court in *Refino v. Feuer Trans., Inc.,* 480 F.Supp. 562 (S.D.N.Y.1979), *aff'd,* 633 F.2d 205 (2d Cir.1980). The Court

**112**

therein found that an arbitration award issued pursuant to the FAA could not be vacated because of inadequate reasoning or even arbitrary determinations. The Court held, however, that it was "arguable," although not certain, that an arbitration award could be vacated if it is "completely irrational." *Refino,* 480 F.Supp. at 565.

OTRA's claim that the panel's finding that it had aided and abetted a securities law violation is in manifest disregard of the law is without merit. While OTRA claims that the evidence presented to the Panel did not establish a primary violation of the securities laws and established that OTRA had no knowledge of any alleged scheme to commit securities fraud, a letter of January 10, 1990, from OTRA's attorney discusses the participation of others in the alleged fraud. (Shap.Aff., Ex.G.) The transcript of the arbitration proceedings contains other evidence from which the panel could reasonably find knowledge on the part of OTRA. (Tr. at 228–30, 407, 447, 511–12.)

In short, OTRA does not argue that the panel ignored a well-settled principle of law. Rather, they argue with the panel's view of the evidence adduced at the hearing. As pointed out above, the manifest disregard standard is a narrow exception permitting reversal only when arbitrators ignore clearly-governing legal principles. For the same reasons, OTRA's arguments would fail were we to apply the "completely irrational" test.

Finally, OTRA argues that the panel's award of attorney fees should be vacated as arbitrary and capricious. As discussed above, this Court's authority to vacate as arbitrary and capricious an arbitration award is questionable. This claim could also assert that the arbitrators exceeded their authority, however, so it will be considered under the standards applicable to Subsection 4.

■ The Second Circuit has recognized an arbitrator's authority to grant legal fees. *See Synergy Gas Co. v. Sasso,* 853 F.2d 59, 64 (2d Cir.), *cert. denied,* 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988). In addition, the courts in this circuit may look to the logic of rulings of New York State courts in arbitration matters. *El Hoss Eng'r & Transp. Co. v. American Indep. Oil Co.,* 289 F.2d 346, 350 (2d Cir.), *cert. denied,* 368 U.S. 837, 82 S.Ct. 51, 7 L.Ed.2d 38 (1961). In *Neuberger & Berman v. Donaldson Lufkin & Jenrette Securities Corp.,* MC 65–16533, the New York Supreme Court considered a petition to vacate a New York Stock Exchange arbitration award on the ground that the arbitrators exceeded their powers by awarding attorneys' fees to the respondents.

The petitioner had filed a Uniform Submission Agreement, which stated that "[t]he undersigned parties hereby submit the present matter in controversy, as set forth in the attached Statement of Claim … to arbitration." In addition, they submitted a Statement of Claim that sought recovery for, *inter alia,* attorneys' fees.

The petitioner contended that the issue of attorneys' fees was not submitted to the arbitrators under the Submission Agreement. The court held that, since the parties' Uniform Submission Agreement incorporated the petitioner's statement of claim and the statement of claim requested attorneys' fees, the arbitrators were empowered to decide the issue of attorneys' fees.

■ In the present case, OTRA submitted a Uniform Submission Agreement which provided that "[t]he undersigned party hereby submits the present matter in controversy, as set forth in the attached statement of claim … to arbitration." In the attached statement of claim FIEC sought damages for "attorneys' fees incurred in connection with the negotiations for an agreement with Alex Brown … [and] the costs and attorneys' fees incurred in connection with this proceeding." OTRA's reliance on *Sammi Line Co. v. Altamar Navegacion, S.A.,* 605 F.Supp. 72 (S.D.N.Y.1985), in which there was apparently a complete absence of a contractual basis for attorneys' fees, is therefore misplaced. As in *Neuberger & Berman,* the arbitrators in the present case had the authority to award attorneys' fees.

OTRA claims that *Neuberger & Berman* is distinguishable because, in that case, the parties against whom attorneys' fees were awarded failed to object to the opposing parties' entitlement to such fees until after the claims had been decided and the attorneys'

fee awards entered. OTRA claims, however, that it briefed and argued the issue to the arbitrators who evidently were persuaded by the legal arguments presented by FIEC. OTRA has failed to make the requisite showing that the arbitrators either exceeded their authority or acted in a completely irrational fashion in awarding attorneys' fees.

*Conclusion*

For the reasons stated above, OTRA's motion to vacate the arbitration award is denied and FIEC's cross motion to confirm the Award and enter judgment on the Award is granted. Settle judgment on notice.

It is so ordered.