Milton BARNES, Petitioner–Appellant,

v.

Martin LOGAN, Koren Logan, Trustees
for the Logan Inter Vivos Trust,
Respondents–Appellees.

No. 96–16299.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 15, 1997.

Decided Aug. 20, 1997.

Frank Lewis, Begam, Lewis, Marks & Wolfe, Phoenix, AZ, for petitioner-appellant.

Craig M. Hughes, Zelle & Larson, San Francisco, CA, for respondents-appellees.

Before: HUG, Chief Judge, and FARRIS and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

This is an appeal from a judgment of the district court confirming an arbitration award under the Federal Arbitration Act, 9 U.S.C. §§ 9, 10. The district court had jurisdiction under 28 U.S.C. § 1332.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

Respondents-appellees Martin and Koren Logan, husband and wife, and trustees of the Logan Revocable *Inter Vivos* Trust (collectively, Logan), were long-time customers of petitioner-appellant Milton Barnes (Barnes), a registered securities representative. Logan had followed Barnes from two prior brokerage houses to John G. Kinnard and Company, Inc. (Kinnard & Co.)

Logan, claiming that his account at Kinnard & Co. had been mismanaged and had declined in value from $464,000 to $269,000 in nine months, during which period Barnes had earned $123,000 in commissions, instituted an arbitration proceeding against Barnes, Kinnard & Co. and Scott R. Grady, the Kinnard & Co. Branch Manager in Phoenix. At issue in the arbitration were Logan's investment objectives, the extent of his "sophistication," how Barnes managed the account, and related issues (such as asserted misrepresentations by Barnes and whether Barnes had engaged in churning the account).

Resolving the factual disputes in Logan's favor, a panel of arbitrators (arbitrators), appointed under the rules of the National Association of Securities Dealers (NASD), awarded Logan $261,561 in compensatory damages, plus $27,463 in pre-award interest. This award was made jointly and severally against Barnes, Kinnard & Co. and Grady. They also awarded Logan $500,000 in punitive damages against Kinnard & Co. and Grady, and $250,000 in punitive damages against Barnes. Barnes petitioned the district court to vacate the award against him, *i.e.*, the joint and several award of $261,561 (plus interest) in compensatory damages and the separate award against him of $250,000 in punitive damages.[2] The district court denied Barnes' petition to vacate the arbitration award and granted Logan's motion to confirm the award. Barnes timely appeals.

## II. STANDARD OF REVIEW

Appellate courts review the confirmation or vacation of an arbitration award like "any other district court decision ... accepting findings of fact that are not 'clearly erroneous' but deciding questions of law *de novo.*" *First Options, Inc. v. Kaplan,* 514 U.S. 938, 947, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995) (citation omitted); *Woods v. Saturn Distrib. Corp.,* 78 F.3d 424, 427 (9th Cir.), *cert. dismissed,* —— U.S. ——, 117 S.Ct. 30, 135 L.Ed.2d 1123 (1996). However, judicial review of an arbitrator's decision "is both limited and highly deferential." *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.,* 84 F.3d 1186, 1190 (9th Cir.1996). An award will not be set aside unless it manifests a complete disregard of the law.

1. The Federal Arbitration Act does not independently confer jurisdiction. *Garrett v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 882 (9th Cir.1993).

2. We have been informed that Kinnard & Co. and Grady have settled with Logan and that the amount of the settlement is less than Kinnard & Co. and Grady's total liability under the award. We therefore assume, for the purpose of deciding this appeal, that Barnes' contention regarding compensatory damages (which were awarded jointly against him, Kinnard & Co. and Grady) has not been rendered moot by the settlement. We leave the determination of this issue, *i.e.*, the extent to which, if at all, the Kinnard & Co. and Grady settlement discharged Barnes' joint and several liability to Logan for compensatory damages, to the district court in judgment enforcement proceedings or otherwise.

822

*Id.* Thus, an award must be confirmed if the arbitrators even arguably construed or applied the contract and acted within the scope of their authority. *United Food & Commercial Workers Int'l Union v. Foster Poultry Farms,* 74 F.3d 169, 173 (9th Cir.1995). We may affirm the judgment of the district court on any ground fairly supported by the record. *Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989).

### III. ANALYSIS

#### A. Punitive Damages

##### 1. Choice of Law

■ The Customer Agreement between Logan and Kinnard & Co. provided in its paragraph 14, *Choice of Laws:*

> This agreement shall be deemed to have been made in the State of Minnesota and shall be construed, and the rights and liabilities of the parties determined, in accordance with the laws of the State of Minnesota.

Barnes contends that the arbitrators erred in awarding punitive damages because (1) the agreement is governed by Minnesota law, and (2) punitive damages are not permitted under Minnesota law where the only injury is economic.

In *Volt Info. Sciences, Inc. v. Board of Trustees of the Leland Stanford Jr. Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), the Court held that the parties to an arbitration agreement could agree to which state's law governed, even where the law chosen differed from the Federal Arbitration Act. *Id.* at 479, 109 S.Ct. at 1256. This principle was somewhat refined in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). There the Client's Agreement contained an arbitration clause and a choice-of-law provision. The latter specified that the agreement was governed by New York law. *Id.* at 54–56, 115 S.Ct. at 1215. New York decisional law held that only judicial tribunals, and not arbitrators, were empowered to award punitive damages.[3] *Id.* The Court held that application of that caselaw was inconsistent with the Federal Arbitration Act and construed the choice-of-law provision, as follows:

> We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other.

*Id.* at 63–64, 115 S.Ct. at 1219.

Both sides claim to find support for their respective positions in *Mastrobuono.* Barnes contends that the substantive law of Minnesota governs the availability of punitive damages and, therefore, under *Mastrobuono,* we must look to the Minnesota decisional law to determine if punitive damages were appropriately awarded. Logan contends that *Mastrobuono* stands for the proposition that because the parties chose to abide by the NASD rules of arbitration, and the NASD rules allow arbitrators to award punitive damages, punitive damages were appropriately awarded in this case. The Minnesota caselaw at issue, unlike the New York case involved in *Mastrobuono,* is part of the *substantive* law of Minnesota—it is not a law that limits arbitrators or applies only to arbitration proceedings. It addresses the kinds of injuries for which punitive damages can be awarded.

In this respect, this case is similar to *Gateway Tech., Inc. v. MCI Telecomm. Corp.,* 64 F.3d 993 (5th Cir.1995). *Gateway* involved an arbitration in which the arbitrator awarded $2 million in punitive damages. However, applying the holding of *Mastrobuono,* the court held that because punitive damages were available under applicable state law only for torts, and that case involved only a breach of contract, the arbitrator's award of punitive damages was beyond his authority. *Id.* at 999 (also collecting cases), 1001. This case is like *Gateway* and unlike *Mastrobuono* in that the law on punitive damages, dis-

---

**3.** *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976).

cussed below, is the substantive law of Minnesota.

■ The arbitrators expressly in this case awarded punitive damages "pursuant to Section 3294 of the California Civil Code and pursuant to *Mastrobuono*." Thus, they acted beyond their authority and the applicable law in awarding punitive damages under California law, because the parties clearly had chosen Minnesota law as the governing law. However, as we demonstrate below, this error was harmless.

The Minnesota Supreme Court has held, at least in products liability cases, that punitive damages are recoverable only in cases of personal injury and not for economic injury.

> [T]he school district here only suffered property damage. The remedy of punitive damages concerns the "vital state interest of protecting persons against personal injury." We believe ... that denying punitive damages where a plaintiff only suffers property damage reflects the greater importance society places on protecting people.

*Independent Sch. Dist. No. 622 v. Keene Corp.*, 511 N.W.2d 728, 732 (Minn.1994) (citation omitted) (*Keene*). *Keene* has been broadly interpreted as barring punitive damages in all cases not involving personal injury. *Soucek v. Banham*, 524 N.W.2d 478, 480 (Minn.Ct.App.1994). However, *Soucek*, in turn, has been limited by what seems to be a more sensible interpretation of *Keene*. The latest expression from a Minnesota appellate court limits *Keene* to products liability actions and permits the award of punitive damages for the deliberate disregard of rights, including for fraud. *Molenaar v. United Cattle Co.*, 553 N.W.2d 424, 428 (Minn.Ct.App.1996).

Barnes contends that the arbitrators' decision should be vacated because they failed properly to apply Minnesota law. This contention is based on Barnes' reading of *Soucek* that, under *Keene*, punitive damages cannot be awarded in any case that does not involve personal injury. In his reply brief, he con-tends that *Molenaar*, which was not decided until after the arbitration was completed, represents a change in the law. On this basis, Barnes suggests that the arbitrators should have followed Minnesota law as it existed at the time of the arbitration.

On the other hand, Logan contends that Minnesota permitted punitive damages to be recovered for fraud well before *Molenaar*, citing *Jensen v. Peterson*, 264 N.W.2d 139, 144 (Minn.1978). Logan is correct, at least in the sense that the Minnesota Supreme Court has continued to approve the award of punitive damages in cases not involving personal injury. *See, e.g., Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271, 277 (Minn.1995) (approving award of punitive damages, in addition to double damages, in age and disability discrimination in employment case).[4]

Ordinarily, when we are faced with two conflicting decisions from a state's intermediate appellate courts, such as *Soucek* and *Molenaar*, "this Court must determine what decision the highest court [of the state] would reach if faced with the issue." *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir.1997) (citation omitted). In this case, however, we need not engage in that analysis because the issue before us is not, precisely, what the Minnesota law of punitive damages is, but whether the arbitrators acted in manifest disregard of Minnesota law in awarding punitive damages.

In *Molenaar*, the Minnesota Court of Appeals, citing *Jensen* and *Phelps*, concluded that punitive damages were properly awardable for the intentional disregard of rights not involving personal injury. *Molenaar*, 553 N.W.2d at 427–28. If, under the current state of the law, a Minnesota intermediate appellate court can conclude that punitive damages are available even though no personal injury is involved, we cannot conclude that the arbitrators acted in manifest disregard of Minnesota law in awarding punitive damages.

Barnes has advanced no reason why it would be a manifest injustice to apply Minne-

4. The arbitration in this case was conducted in October, 1995, and the award was rendered in January, 1996. *Phelps* was decided on Sept. 8, 1995, before the arbitration in this case took place.

sota law, as expounded by *Molenaar,* to this appeal.[5] Because Minnesota law permits the award of punitive damages for fraud, the arbitrators' error in referencing California law in awarding punitive damages was harmless.

### 2. *"Adams" Error*

■ Barnes next contends that the award of punitive damages was in manifest disregard of the law, specifically of the requirement of *Adams v. Murakami,* 54 Cal.3d 105, 284 Cal.Rptr. 318, 813 P.2d 1348 (1991), that evidence of a defendant's financial condition is a prerequisite to the award of punitive damages, *id.* at 325, 813 P.2d at 1355, and that the plaintiff bore the burden of establishing the defendant's financial condition. *Id.* at 330, 813 P.2d at 1360. *Adams,* however, is a requirement of California law, and we have concluded, above, that the this arbitration is governed by Minnesota law. Under Minnesota law, there is no requirement, similar to *Adams,* that a claimant bear the burden of proving the wrongdoer's financial condition.

> Thus, evidence of a defendant's financial condition is an important consideration in determining whether a punitive damages award is excessive, but it is not necessarily an essential element to prove entitlement to those damages.

*Nugent v. Kerr,* 543 N.W.2d 688, 691 (Minn. Ct.Ap.1996).[6] Thus, not applying *Adams* was not in manifest disregard of Minnesota law.

For all of these reasons, the arbitrators' award of punitive damages was not in manifest disregard of the law.

### 3. *Due Process*

■ Barnes next makes something akin to a due process argument by contending that the award of punitive damages by arbitrators should be subject to some kind of "height-

ened scrutiny." However, as the district court recognized, we have "flatly rejected" this argument. In *Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056 (9th Cir. 1991), the appellant argued "that the punitive damage award here violates due process because the award is not subject to the procedural strictures of the courtroom." *Id.* at 1063. We held that a party cannot agree to arbitration,

> and then assert that an award made pursuant to that agreement ... denies due process because it is not sufficiently reliable. Cunard had every opportunity to present evidence, to argue the merits of its position, and to challenge the arbitrator's award in court. Having taken advantage of this process, into which it entered voluntarily, Cunard cannot now argue that its due process was denied.

*Id.* at 1063–64. Thus, Barnes' due process challenge must fail. Moreover, even without engaging in a plenary review of the evidence, it is clear that the punitive damages award against Barnes, which was less than the amount of compensatory damages, was not grossly excessive. *See BMW v. Gore,* —— U.S. at ——, 116 S.Ct. at 1595.

### B. *Compensatory Damages*

■ Barnes contends that the arbitrators had "no rational basis" for the amount of compensatory damages they awarded because damages were awarded for the period even after Logan was warned by his accountant "that his investment account included high-risk margin trading and that he could lose everything." Logan's arbitration claim alleged that he learned of Barnes' improprieties on August 1, 1994, whereas he admitted in his testimony that his accountant advised him of the same improprieties in early 1994. Thus, at this point, Barnes contends, Logan was no longer entitled to rely on any asserted misrepresentations by Barnes. Mrs. Lo-

---

5. Although Barnes mounts a due process challenge to the award of punitive damages, discussed in Part III.A.3, below, it is not based on any asserted lack of fair notice that punitive damages were potentially awardable by the arbitrators. Therefore, we need not decide whether, in the circumstances of this case, there was such a lack of "fair notice," *see BMW of North Amer-*

*ica v. Gore,* —— U.S. ——, ——, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809 (1996), as would amount to "a manifest injustice."

6. The Minnesota rule represents the "majority view." *Kemezy v. Peters,* 79 F.3d 33 (7th Cir. 1996).

gan, however, testified to a different recollection of the meeting with their accountant in early 1994 and the arbitrators could have chosen to believe her version over that of her husband's. Therefore, this is merely a dispute over the assessment of the evidence and we must defer to the arbitrators' findings of fact.

Also, as the district court noted, "the record provides no evidence that the compensatory damages were based on misrepresentation alone. As respondents point out, the panel may have assessed damages based on losses arising out of professional negligence or breaches of fiduciary duty. It is not for this court to speculate, based on the sparse record and slim arguments, as to the panel's reasoning."[7] We agree.

> Review of arbitration awards is narrow:
>
> We review the Panel's award mindful that confirmation is required even in the face of "erroneous ... misinterpretations of the law." ... It is not even enough that the Panel may have failed to understand or apply the law.... An arbitrator's decision must be upheld unless it is "completely irrational," or it constitutes a "manifest disregard of law."

*Todd Shipyards,* 943 F.2d at 1060 (citations omitted). Here, it cannot be said that the amount of compensatory damages awarded is either "completely irrational" or in "manifest disregard of the law." Under the deferential standard of judicial review applicable to arbitrators' awards, the district court did not err in confirming the award of compensatory damages.

### IV. SANCTIONS

▮ Logan seeks attorney's fees and double costs under Fed. R.App. P. 38. His reasons are "the lack of support in the law for Barnes' various positions, the defalcations which Barnes committed against them, and the nature of their present circumstances."

Two of the three reasons given have nothing to do with the merits of Barnes' appeal, but with his underlying conduct and Logan's "circumstances." These are not reasons to assess sanctions under Rule 38. On the merits, this appeal does not appear to be frivolous or wholly without merit. The Minnesota law of punitive damages was not "clarified" until the pendency of this appeal. The request for Rule 38 sanctions is denied. *See Taylor v. Sentry Life Ins. Co.,* 729 F.2d 652, 656 (9th Cir.1984) (imposing sanctions where appeal was "wholly without merit").

The judgment of the district court is **AFFIRMED.**

---

7. The Customer Agreement provided: "The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited."

In accordance with that dispensation, the arbitration award contains no factual findings or conclusions of law. It consists of a "Case Summary," which amounts to a summary of the parties' contentions, "Relief Requested," "Other Issues Considered and Decided," and an "Award." It is six pages long, including a title page and a signature page.