**WAILUA ASSOCIATES, Plaintiff,**

v.

**The AETNA CASUALTY & SURETY COMPANY, Defendant.**

**Civ. No. 94–00446 ACK.**

United States District Court,
D. Hawai'i.

Sept. 26, 1997.

Richard C. Sutton, Jr., Tracy G. Chinen, Rush Moore Craven Sutton Morry & Beh, Honolulu, HI, Paul Alston, David A. Nakashima, Alston Hunt Floyd & Ing, Honolulu, HI, Mark L. Tuft, Stephen D. Kaus, Cooper White & Cooper, San Francisco, CA, for Plaintiff.

Dianne G. Jagmin, Case & Lynch, Honolulu, HI, G. Edward Rudloff, Jr., Marjie D. Barrows, Gordon & Rees, San Francisco, CA, Paul A. Lynch, Lynch Ichida Thompson & Kim, Honolulu, HI, Lyle M. Ishida, Tom & Petrus, Honolulu, HI, Marjie D. Barrows, Rudloff Wood & Barrows, L.L.P., San Francisco, CA, for Defendant.

## ORDER CONFIRMING APPRAISAL AWARD IN ITS ENTIRETY

KAY, Chief Judge.

### FACTUAL BACKGROUND

On or about September 11, 1992, the Coco Palms Resort on the island of Kauai sustained damage as a result of Hurricane Iniki. The Coco Palms Resort is owned by plaintiff Wailua Associates ("Wailua"). During the period of November 1, 1991 through November 1, 1992, the Coco Palms Resort was insured by the defendants, the Aetna Surety and Casualty Company ("Aetna") under ·a policy covering property damage resulting from the hurricane. In addition to covering the actual hurricane damage, the policy provided coverage for the increased cost of repair or replacement caused by enforcement of ordinances and codes. Following the onslaught of Hurricane Iniki, Wailua furnished Aetna with notice and proof of its losses. Aetna denied portions of Wailua's claim regarding coverage, damages and cost of repair. The parties were unable to reach an agreement as to the value of the Coco Palms Resort. Consequently, on May 25, 1994,

Wailua demanded an appraisal of the property value and amount of loss pursuant to its insurance policy and filed suit against Aetna to enforce its demand.

On January 19, 1995, this Court ruled that the parties' appraisal agreement was an agreement to arbitrate covered by the Federal Arbitration Act ("FAA"), therefore the parties were entitled to a fundamentally fair hearing, including adequate notice and the opportunity to present evidence and arguments. *Wailua Assoc. v. The Aetna Casualty & Surety Co.*, 904 F.Supp. 1142, 1148 (D.Haw.1995) ("Wailua I"). With respect to the ordered appraisal, this Court ruled that the "the panel is to determine the value of Coco Palms resort prior to the hurricane and the damage sustained by the resort as a result of the hurricane." *Id.* at 1149. The appraisal panel was further instructed that it had discretion to consider Kauai's Flood Plan Management Act ("Ordinance 630"). On the other hand, the panel was instructed that it should not consider issues pertaining to coverage and liability under the insurance policy. *Id.*

The appraisal commenced in the spring of 1995 and concluded in the fall of 1996. The appraisal panel issued its Award on January 10, 1997. Preliminarily, the Award states the fair market value of the Resort prior to the hurricane was $19,086,000. The Award then identifies two different time periods ("1st period" and "2nd period," respectively); each of which includes the elements of repair cost, actual cash value and the cost of compliance with Ordinance 630. The 1st period represents:

> ... all costs for repair of damage caused by or resulting from the hurricane had damage mitigation and permanent repair work commenced within the first nine

months after the hurricane occurrence on September 12, 1992.

The 2nd period represents:

> ... all costs for repair, including Repair Cost 1st Period, as of the date of this appraisal based on the damage condition of the buildings as they exist today.[1]

The Award states that the 1st period repair costs are $9,233,000, that the actual cash value for resort damage is $5,835,000 and that the cost of compliance with Ordinance 630 is $2,000,000. The Award further states that for the 2nd period repair costs are $13,618,000, that the actual cash value for resort damage is $8,432,000 and that the cost of compliance with Ordinance 630 is $3,800,000. The policy provides that Aetna shall pay the repair costs plus the costs of compliance with various codes, inclusive of Ordinance 630; thus the total for the 1st period is $11,233,000 and the total for the second period is $17,418,000.[2]

On April 10, 1997, Wailua filed its motion to confirm the Award for the 2nd period amount of $17,418,000 or, in the alternative, to vacate the Award. On September 11, 1997, Aetna filed its opposition requesting the Court to deny Wailua's motion and to confirm the Award in its entirety. The Court heard oral argument on September 22, 1997.

## DISCUSSION

### I. *Confirmation of The Award*

Judicial review of an arbitration award is extremely limited.[3] Section 9 of the FAA mandates a court to order confirmation unless the award is "vacated, modified or corrected...." 9 U.S.C. § 9 (stating that the court "must" confirm). "An [arbitration] award will not be set aside unless it manifests a complete disregard of the law." *Barnes v. Logan*, 122 F.3d 820, 821–22, 1997 WL 472075 (9th Cir.1997). In fact, "an arbi-

---

**1.** Exhibit A to the Appraisal lists the repair costs for each period under a heading "Costs From Hurricane."

**2.** Aetna is only responsible for repair costs in the event that Wailua chooses to rebuild. Otherwise, the policy provides that Aetna is responsible for actual cash value only. Evidently virtually no rebuilding has occurred to date.

**3.** In this case, rather than an arbitration award, at issue is an appraisal award. Because the appraisal award was made pursuant to the parties' arbitration agreement, the terms shall be used interchangeably in the forthcoming analysis.

tration award must be confirmed '[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms,* 74 F.3d 169, 173 (9th Cir.1995) (citation omitted). As repeatedly stated by the Ninth Circuit, if, "on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *Id.* (citing to *Sheet Metal Workers Int'l Assoc. v. Arizona Mechanical & Stainless, Inc.,* 863 F.2d 647, 653 (9th Cir.1988)).

Plaintiff argues that the Award in this case is seemingly unusual inasmuch as it breaks the hurricane damage into two different time periods. Without citation to any legal authority, plaintiff has moved this Court to confirm only the portion of the Award that gives it the greatest financial benefit, the 2nd period, and to disregard the 1st period figures in their entirety. This the Court cannot do.

The appraisers did not "manifestly" disregard either this Court's order in *Wailua I* nor the applicable insurance policy. *See Barnes v. Logan,* 122 F.3d 820, 1997 WL 472075. The definition of the 1st period includes "all costs for repair of damage caused by or resulting from the hurricane had damage mitigation and permanent repair work commenced within the first nine months after the hurricane occurrence on September 12, 1992." The definition comports with the relevant insurance provision at issue which states that it covers "direct physical loss of or damage caused by or resulting from a covered cause of loss." Furthermore, the time period categories appear to comply with the spirit of this Court's order to determine (1) the fair market value of the resort, and (2) the damage sustained by the resort as a result of the hurricane. Rather than making a determination regarding "mitigation" or "liability," the panel attempted to categorize the losses in a fashion to exclude from the repair figures costs not directly associated with the hurricane. Such a determination is clearly within the scope of authority as dic-

tated by this Court. In fact, the appraisers adopted categories suggested by the plaintiff in its proposed award form when they calculated several valuations of hurricane damage. Accordingly, plaintiff's motion to partially confirm the Award is denied and the Court hereby confirms the Award in its entirety.[4]

## II. *Vacating the Award*

Section 10(a)(4) of the FAA provides that an award, i.e., the appraisal, may be vacated in the event that the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). *See e.g., Coast Trading Co. v. Pacific Molasses Co.,* 681 F.2d 1195, 1198 (9th Cir.1982); *Western Employers Ins. Co. v. Jefferies & Co.,* 958 F.2d 258, 261–62 (9th Cir.1992) (as amended). Plaintiff maintains that the panel improperly considered issues of mitigation in calculating the 1st period figure, and as such, the Court must ignore the 1st period figures. Plaintiff contends that if the Court cannot confirm the Award in the 2nd period amount, then it must vacate the Award as an Award in excess of the appraisal panel's authority or failure of the panel to comply with its duties.

However, the power to vacate is extremely narrow both in scope and in application. As previously stated, judicial scrutiny of an arbitrator's decision is quite limited. *Foster Poultry Farms,* 74 F.3d at 173 (citation omitted). Furthermore, an arbitration award is to be confirmed rather than vacated in the absence of a manifest abuse of the law. *Barnes v. Logan,* 122 F.3d 820, 821–22, 1997 WL 472075 (9th Cir.1997). This case is easily distinguishable from cases that have vacated arbitration awards. In *Coast Trading,* the arbitrators were expressly limited by a contractual remedy which they ignored. 681 F.2d at 1198. Similarly, in *Western Employers,* the parties' contract specifically required the arbitration panel to provide findings of fact and concussions of law which it did not. 958 F.2d at 259.

On March 27, 1995, this Court denied Aetna's motion for clarification regarding the

---

**4.** The Court notes that numerous legal issues remain, *e.g.,* the duty to mitigate, reimbursement

of actual cash value or repair costs. However, these issues are not currently before the Court.

appraisal award stating, in relevant part, that:

> Clearly the Court did not, as Defendant suggests, mandate the form of the appraisal panel's award; the Court merely suggested that it would make sense for the parties to agree on a more specified form of appraisal so as to save time and expense in future litigation. This Court ruled as to certain limitations to the scope of the appraisal. Any remaining ambiguity regarding the scope of the appraisal and the form of the award was properly left to the discretion of the appraisal panel.

Thus, this Court intentionally left a great deal of discretion to the appraisers in fashioning their Award. Unfortunately, the parties were unable to reach an agreement on more definitive instructions to the appraisers as suggested by the Court. Neither this Court's order nor the insurance policy precluded the appraisal panel from creating the time periods. Accordingly, plaintiff's motion to vacate the Award is DENIED.

### CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion to confirm the Award in part or, in the alternative, to vacate the Award, and CONFIRMS the Award in its entirety. The Court recognizes that the Award includes a number of "appraised values" and that there are additional issues to be adjudicated which may or may not affect the final amount to be awarded under the policy.

IT IS SO ORDERED.