**ASSOCIATION OF FLIGHT ATTENDANTS, AFL–CIO, Plaintiff/Counterclaim Defendant**

v.

**ALOHA AIRLINES, INC., Defendant/Counterclaim Plaintiff.**

**No. 01–067 DAE/BMK.**

United States District Court, D. Hawaii.

Aug. 16, 2001.

Edward J. Gilmartin, Richard P. Wrede, Association of Flight, Attendants, AFL–CIO, Washington, DC, Herbert R. Takahashi, Rebecca L. Covert, Takahashi Masui & Vasconcellos, Honolulu, HI, for Association of Flight Attendants, AFL–CIO, plaintiffs.

Richard M. Rand, Torkildson Katz Fonseca Jaffe, Moore & Hetherington, Honolulu, HI, for Aloha Airlines, Inc., defendants.

*ORDER GRANTING PLAINTIFF'S MO-TION FOR SUMMARY JUDG-MENT AND DENYING DEFEN-DANT'S CROSS–MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, Chief Judge.

The court heard the parties' motions on August 13, 2001. Richard M. Rand, Esq., appeared on the briefs or at the hearing on behalf of Defendant Aloha Airlines; Richard P. Wrede, Esq., and Rebecca Covert, Esq., appeared on the briefs or at the hearing on behalf of Plaintiff Association of Flight Attendants. After reviewing the motions and the supporting and opposing memoranda, the court GRANTS Plaintiff's Motion for Summary Judgment seeking to compel re-arbitration and DENIES Defendant's Motion for Summary Judgment seeking to confirm the arbitration award. The matter must be re-arbitrated.

## BACKGROUND

The parties' dispute arises from Aloha Airlines' ("Aloha" or "Defendant") discharge of Minoru Malama, who is a member of the Association of Flight Attendants ("AFA" or "Plaintiff").[1] The AFA and Aloha are parties to a collective bargaining agreement ("CBA"), which, among other things, governs employees' grievance procedures for challenging terminations. Pursuant to the CBA, the AFA filed a grievance on Mr. Malama's behalf. Aloha initially denied the grievance, and ultimately the parties submitted the dispute to final arbitration before a Railway Labor Act ("RLA")[2] System Board of Adjustment consisting of three members, one appointed by the AFA (Connie Young), one by Aloha (George Crabbe III), and a neutral member (Thomas Angelo).[3]

The Board convened on February 1, 1999, and took evidence and testimony concerning the grievance.[4] The Board was delayed in issuing a decision due to the personal circumstances of Mr. Angelo, including his own health problems and the death of his mother. During this time, Mr. Crabbe and Ms. Young contacted Mr. Angelo on various occasions to inquire about the status of the arbitration. One letter, dated November 2, 1999, signed by both Mr. Crabbe and Ms. Young, requested that, in light of Mr. Angelo's personal problems, he issue a "bench decision" promptly; a written decision could follow later.[5] A few months later, Mr. Crabbe

1. Malama was discharged based on Aloha's assertion that he had poor work attendance.

2. Because Aloha is a common carrier, it is governed by the RLA. *See* 45 U.S.C. § 181 (1986).

3. The CBA contemplates that disputes first go to a Board made up of four members, two from Aloha and two from the AFA. If that results in a deadlock, then a neutral arbitrator is appointed. The parties can agree to bypass this system and proceed directly to arbitration before a panel of three, as done here. Aloha states in its papers that, despite the CBA, the usual practice in grievance situations is to proceed immediately to a three-member panel.

4. The AFA asserts that the three board members agreed at the hearing that Mr. Angelo would prepare a draft opinion to circulate to the other members, who would have the chance to comment on and discuss it at an "executive session" to be held later. At that point, the two other members would note their concurrence or dissent.

5. Specifically, the letter stated as follows:

We were sorry to hear about your health problems and hope your surgery was successful and you are making a full recovery. As you continue your convalescence, the two remaining members (Connie Young and I) of the System Board of Adjustment wanted to know if you would consider rendering a "bench decision" on the [Malama] grievance case. Both Ms. Young and I [George Crabbe] feel that a full written decision can follow at a later date but would like some resolution as soon as possible. Please let us hear from you within two weeks of receiving this letter. If we do not hear from you, we will assume you are

left Aloha's employment, and accordingly, the arbitration panel, without a decision having been rendered.[6]

Finally, on June 6, 2000, Mr. Angelo unilaterally issued a decision to deny the grievance, though he apparently never consulted with the other board members in reaching this decision. *See* Exhibit B to Aloha's Motion; Exhibit 10 to AFA's Motion ("Decision and Award"). In the decision, Mr. Angelo noted that the "parties also stipulated that a shortened decision by the Chair was acceptable." *Id.* at 3. After this issuance, Ms. Young sent a letter to Mr. Angelo indicating that she believed he did not follow correct procedures in processing the decision "by not sending the draft decision to the members of the System Board for their signature as required." *See* Exhibit E to Aloha's Motion. As a result, she issued her own "decision and award" in favor of Mr. Malama. *See id.*

Thereafter, a series of letters were exchanged between Plaintiff, Defendant, and Mr. Angelo. On September 12, 2000, Aloha wrote to Mr. Angelo stating that with the issuance of the decision, Mr. Angelo as arbitrator was "functus officio." *See* Exhibit F to Aloha's Motion; Exhibit 3 to AFA's Motion. The AFA responded on September 12, 2001, with a letter to Mr. Angelo stating that the only "understanding" between the parties was that a decision would be abbreviated, not that it would be made unilaterally by Mr. Angelo without input from the other Board members when the CBA calls for a majority decision. *See* Exhibit G to Aloha's Motion; Exhibit 4 to AFA's Motion.

In response to the AFA's concerns, Aloha notified Mr. Angelo and the parties that it was replacing Mr. Crabbe (who had left the company) with Gene Pellechia as a member of the Board. *See* Exhibit H to Aloha's Motion; Exhibit 5 to AFA's Motion. Mr. Pellechia obviously did not sit at the hearing, but Aloha stated that this should be of no concern as Mr. Angelo's "decision did not involve credibility resolutions since most of the facts of this case were uncontested." *Id.* Mr. Pellechia then reviewed the transcripts, exhibits and briefs. On October 17, 2000, without consulting Mr. Angelo or Ms. Young, he issued a concurrence to Mr. Angelo's decision. *See* Exhibit I to Aloha's Motion; Exhibit 7 to AFA's Motion.

On October 26, 2000, Mr. Angelo submitted a letter to the parties, stating that he understood that they had agreed to a process in which he would issue an opinion and the parties would concur or dissent as appropriate. *See* Exhibit J to Aloha's Motion. He added: "if the AFA was not interested in my issuing an opinion without further discussion by the Board members, I would have expected some communication indicating that view and advice as to how I was to proceed, before I rendered a decision." *Id.* In the end, Aloha felt the arbitration was concluded in its favor after the issuance of Mr. Angelo's award and especially after the concurrence of Mr. Pellechia. The AFA felt that because no official "majority opinion" had been issued, the arbitration was not complete, and that the incompleteness could not be cured by Mr. Pellechia's concurrence. It sought re-arbitration.

---

unable to render a decision and we will try to move forward.
*See* Exhibit D attached to Aloha's Motion.

**6.** While leaving the employment of the company does not automatically disqualify an ar-

bitrator, apparently Mr. Crabbe did not wish to be involved after he left the company. He never, however, officially resigned from the Board.

On January 24, 2001, therefore, the AFA filed a Complaint in this court alleging violation of the RLA. Specifically, the AFA alleged that procedures contained within the CBA were violated because § 23.L of the CBA calls for a decision "by the majority of the voting board members," and Mr. Angelo issued his opinion unilaterally[7] (albeit with after-the-fact concurrence by Mr. Pellechia). It requests this court to declare the award issued by Mr. Angelo null and void and compel Aloha to re-arbitrate the matter. On July 2, 2001, the AFA moved for summary judgment on its Complaint arguing violation of the RLA (as alleged in the Complaint) as well as due process violations based on the Board's perceived failure to come to a majority decision (raised for the first time in the summary judgment motion).

On February 13, 2001, Aloha answered the AFA's Complaint, asserting that Mr. Angelo's award was proper as both Aloha's and the AFA's member had consented to him issuing a "bench decision." Moreover, even if this were not sufficient, any defects were cured by the use of Mr. Pellechia, its alternate System Board member. Aloha also asserted a counterclaim against the AFA, alleging violation of the RLA, and seeking the court to uphold the decision and award as issued by Mr. Angelo. On July 2, 2001, Aloha cross-moved for summary judgment. On July 26, 2001, each party filed an Opposition to the other's Motion, and on August 2, 2001, each filed a Reply.

### STANDARD OF REVIEW

 Federal court review of arbitration awards is extremely limited. *See Stead Motors v. Automotive Machinists Lodge,* 886 F.2d 1200, 1205 (9th Cir.1989) (noting the "nearly unparalleled degree of deference" accorded to arbitrators' decisions). An arbitration award will not be set aside unless the arbitrator acted in manifest disregard of the law. *See Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056, 1060 (9th Cir.1991). Where the parties have agreed to submit their dispute to arbitration, the award "will not be set aside by a court for error in law or fact." *Id.* (citation and internal quotation marks omitted). Parties choose arbitrators to act as judges, and to decide the matters presented to them, "finally and without appeal." *Id.* The Supreme Court has stated that public policy favors the resolution of labor disputes through arbitration. *See United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). If an award reflects the honest decision of the arbitrators, after a full and fair hearing of the parties, a court "will not set it aside for error, either in law or fact" *Todd Shipyards* at 1060 (also noting that it is not enough that an arbitrator may have failed to understand or apply the law; "an arbitrator's decision must be upheld unless it is 'completely irrational,' or it constitutes a 'manifest disregard of law.'") *see also Barnes v. Logan,* 122 F.3d 820, 821 (9th Cir.1997).

---

7. Paragraph 20 of the Complaint states that the AFA believes that George Crabbe (Aloha's original panel member) agreed with the union's position on the underlying grievance and "would endorse the Union's opinion reinstating Malama, but for his fear of retaliation from Aloha." It is unclear, however, what "retaliation" Mr. Crabbe could suffer, especially now that he is no longer employed by Aloha.

In its answer, Aloha alleges that Mr. Crabbe agreed with Aloha's termination decision. *See* ¶ 13 of Answer.

■ An arbitration award will be upheld so long as it "draws its essence" from the CBA. *See Sunshine Mining Co. v. United Steelworkers,* 823 F.2d 1289, 1293 (9th Cir.1987); *see also W.R. Grace & Co. v. Local 759,* 461 U.S. 757, 764, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). The court's job is not to second-guess the arbitrator's contract interpretation, but only to ensure that he is, in fact, interpreting the contract. *See Hawaii Teamsters and Allied Worker's Union, Local 996 v. United Parcel Service,* 241 F.3d 1177 (9th Cir.2001). If so, then the federal court is not empowered to review the merits of the decision. *See Sunshine,* 823 F.2d at 1293.

In the instant case, the arbitration is governed by the terms of the CBA as well as by the RLA, codified at 45 U.S.C. § 151, *et seq.* (1986).

## DISCUSSION

### A. The RLA and the CBA

The RLA establishes that disputes between air carriers (such as Aloha) and their employees must be submitted to a Board of Adjustment. *See* 45 U.S.C. § 184. These Boards of Adjustment may be established by agreement between the employees and carriers, as was done here through the CBA. *See id.*

The CBA §§ 22 and 23 deal with grievances and the System Board of Adjustment. *See* Exhibit A to Aloha's Motion; Exhibit 1 to AFA's Motion.[8] As discussed briefly in the "Background" section, the CBA contemplates that grievances should be submitted to a four member Board, with each side providing two members. *See* CBA § 23.B. However, either side may request "that the dispute be heard by a

three Member Board, consisting of one Board member appointed by the Company, one Board member appointed by the Association, or their respective alternates," and a neutral member.[9] CBA § 23.H.2. Section K of the CBA provides that the decision of the Board "shall be decided by the majority of the voting Board Members." Section M.3. provides that where the four-panel Board must select a neutral to break a deadlock, the Board, "as then constituted, shall consider the dispute pending before it" and render a decision "only on the specific issues that caused the deadlock."

### B. Unilateral Issuance of the Award

■ The first question presented to this court is whether Mr. Angelo's solo opinion is a valid "final and binding" arbitration award. As a general matter, where there are multiple arbitrators, a majority are required to render a valid decision. *See* 45 U.S.C. § 153; CBA § 23; *Jones v. St. Louis–San Francisco Railway Co.,* 728 F.2d 257 (6th Cir.1984); *cf. Marine Products Export Corp. v. M.T. Globe Galaxy,* 977 F.2d 66 (2d Cir.1992) (holding that in circumstances where a member of an arbitration panel dies before a decision is rendered, parties must re-arbitrate with an entirely new panel). In this case, while a majority of the arbitrators remained on the case (two out of three), they could not reach a majority decision. Therefore, absent any special circumstances, Mr. Angelo's unilateral award is invalid (i.e., not final or binding) under the RLA, the CBA and the case law.

Aloha argues, however, that special circumstances are present here, namely that the parties agreed by their November 2,

---

8. The copy of the CBA provided to the court from Aloha is dated September 1, 1993—August 31, 1998, while the one provided from the AFA is dated September 1, 1998—August 1, 2003. A review of both documents reveals that they are identical save for the effective dates.

9. The neutral member is to be jointly selected from a panel of neutrals established by both parties.

1999, letter that Mr. Angelo could issue a unilateral award. The letter states: "the two remaining members (Connie Young and I) of the System Board of Adjustment wanted to know if you would consider rendering a 'bench decision' on the above-captioned grievance case. Both Ms. Young and I feel that a full decision can follow at a later date but would like some resolution as soon as possible." Aloha apparently reads this letter as authorizing a unilateral decision.

The court disagrees and finds that the letter cannot reasonably be so construed. At most, it provides that the arbitrator should state his opinion on the matter promptly (with which the remaining members can agree or disagree) and then the panel can issue a full written decision at a later time. Allowing the neutral arbitrator on a three-member panel to make a unilateral decision is no small matter, it goes against the entire construct of the CBA and RLA arbitration system. It is questionable in the first instance whether the other two (partisan) arbitrators would have the power to give authorization to waive the substantial rights of the airline or the employee. Moreover, if the other two arbitrators intended to abrogate such a central premise of the arbitration system in place (requiring discussion among the members and a majority vote), surely it would have been spelled out specifically. See *Jones*, 728 F.2d at 262–264 (holding that "in order to have a valid award, a majority of the Board must hear the parties and participate in the decisionmaking process before rendering an award" and that "it is improper for the chairman to render a decision against either party without first consulting with the other designated arbitrators"); see generally, C.T. Drechsler, Annotation, *Effect of Vacancy through Resignation, Withdrawal, or Death of One of Multiple Arbitrators on Authority of Remaining Arbitrators to Render Award*, 49 A.L.R.2d 900 (1956).

Such an alteration of the CBA is not properly stated ambiguously (at best) in a short letter between the panel members. The court finds that Mr. Angelo's unilateral decision, therefore, was not valid.

The court understands that the scope of review of the *merits* of arbitration awards is very limited. See "Standard of Review" section, *supra*. However, in this case, there is no final award to review. The AFA is not challenging the merits of the decision, but the process through which it was achieved. As the process is not one contemplated by the CBA, it cannot be said to "draw its essence" from the CBA, and therefore cannot stand.

### C. Substitute Appointment

■ Having found that Mr. Angelo's award cannot stand alone, the court must next consider whether it subsequently became valid by the after-the-fact concurrence by Mr. Pellechia. Aloha argues that such a "substitute appointment" was proper; the AFA argues that his concurrence cannot create a post-hoc final and binding decision. The court agrees with the AFA.

In arguing that the board did not issue a final and binding decision despite Mr. Pellechia's concurrence in Mr. Angelo's award, the AFA relies on § 23.M.3. of the CBA, arguing that it absolutely requires that the decision be made by the board members present at the hearing. Section 23.M.3. states:

The Board, as then constituted, shall consider the dispute pending before it. The Board shall render a decision only on the specific issue that caused the deadlock. A majority vote of the Board shall be final, binding, and conclusive between the Company and the Association and anyone they may represent having an interest in the dispute.

The AFA urges this court to interpret the phrase "as then constituted" to mean that

Aloha cannot substitute panel members when the original member is no longer able or willing to participate in the arbitration. A closer look at the entirety of Section 23 of the CBA, however, reveals that this is clearly not how the phrase should be construed. The preceding sections detail the procedure for appointing a neutral arbitrator when the four-member panel reaches a deadlock.[10] When § 23.M.3. speaks to the Board "as then constituted," it means to refer to the four initial panel members plus the neutral arbitrator. In other words, it refers to the new makeup of the Board, not to a point in time.

■ After a careful review of the CBA, the court finds that it does not provide any specific guidance as to how to handle a situation where one of the arbitrators withdraws before a final decision is rendered. The use of substitute appointments has not often been discussed in the recent case law, and where it is, the use of substitute appointments is disfavored. One case, for example, involved a five-member arbitration panel, consisting of four "partisan" members and one neutral. *See Jones,* 728 F.2d 257. All four of the partisan members withdrew after the hearing but before issuance of the award. The Sixth Circuit held that substitute appointments who had not heard the evidence were not capable of participating in the decision. *See id.; see also Marine Products,* 977 F.2d 66.[11] Employees are entitled to have their grievances resolved by arbitrators who participated in the hearing, not those merely appointed after the fact.[12] *Cf. Marine Products,* 977 F.2d 66 (holding that, at least in circumstances

10. Of course in this case, there never was a four-member panel.

11. The court takes this opportunity to distinguish *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.,* 931 F.2d 191 (2d Cir. 1991), a pre-*Marine Products* case relied on heavily by Aloha. In that case, the parties had agreed to submit their dispute to a similar three-member panel. The panel took up the question of liability first, issuing final and binding decision on that issue the same day as the hearing. It saved the question of damages for later. However, before damages could be taken up, one of the partisan panel members died and was replaced. The court approved use of the replacement, essentially on the grounds that the liability issue was already "final and binding" and there had yet to be any hearing on the issue of damages. Therefore, the replacement could take up the new issue. *Id.* Notably, that situation involved appointing a replacement to hear and decide on entirely different issues, unlike the instant case, where no decision was rendered on the issues heard by Mr. Crabbe.

Aloha did not cite any cases where the use of a substitute arbitrator was approved in circumstances similar to those present here.

12. Aloha argues that the issues to be decided by the arbitrators in this case concerned the interpretation of the CBA and did not require factual or credibility determinations. Therefore, the court should not be concerned that Mr. Pellechia merely reviewed the evidence and transcripts rather than attending the hearing himself. The court cannot conclude with certainty, however, that no factual or credibility determinations were involved. Moreover, a basic reason behind an arbitration panel of three rather than a single arbitrator is to allow the panel members to consult and attempt to persuade each other. *See* 49 A.L.R.2d 900 at § 7 (noting that a valid award can be rendered only after the arbitrators have had the opportunity to consult and to persuade each other of their opinions). There was no such consultation here.

The function of an arbitration panel, which acts as the trier of fact as well as renders legal conclusions, is fundamentally different from, for example, an appeals court panel, which decides cases after initial factual conclusions have already been made (and after consultation among panel members). It is, of course, reviewing a record on appeal, not creating a record in the first instance, as an arbitration panel does. Additionally, the arbitration system at issue here does not have the same procedural safeguards as an appeals court panel which is made up of three neutral members, rather than just one.

where one arbitrator dies before a final decision is issued, it is insufficient to appoint a replacement; new arbitrators must be empaneled). Thus, the use of the substitute appointment was not valid under the RLA, the CBA, or the case law. The integrity of the entire arbitration process here has been fundamentally called into question and is fatally defective.[13] The court, therefore, ORDERS that this matter be re-arbitrated.

Because the court has found that the arbitration process was not proper under the law or the CBA, it need not address the AFA's constitutional due process arguments.

### CONCLUSION

For the reasons stated above, the court GRANTS the AFA's Motion for Summary Judgment and DENIES Aloha's Motion for Summary Judgment. There was no final and binding arbitration award issued, and thus the matter requires re-arbitration.

IT IS SO ORDERED.

---

**13.** Aloha attempts to argue that any flaw in the "consultation process" between the arbitrators was cured by Mr. Pellechia's offer in his October 17, 2000, letter to be available for discussion on this matter, which Ms. Young did not take up. *See* Exhibit I to Aloha's Motion; Exhibit 7 to AFA's Motion. This argument is unavailing, however, as in the very same letter Mr. Pellechia had already announced his concurrence, thus any "discussion" would be after the fact. In addition, as Mr. Pellechia was the new-comer to the arbitration panel, he reasonably could be expected to initiate the consultation, rather than putting the onus on the other panel members.