. **Herbert COUTEE; Lorine Coutee,**
**Petitioners–Appellees,**

v.

**BARINGTON CAPITAL GROUP, L.P.;**
**Morton Gerald Gropper; Bruce Adam**
**Gropper; James Anthony Mitarotonda; Jerome Snyder; John Telfer, Respondents–Appellants.**

---

Herbert Coutee; Lorine Coutee,
Petitioners–Appellants,

v.

Barington Capital Group, L.P.; Morton
Gerald Gropper; Bruce Adam Grop-
per; James Anthony Mitarotonda; Je-
rome Snyder; John Telfer, Respon-
dents–Appellees.

Nos. 02–56016, 02–56052.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2003.

Filed July 28, 2003.

1130

Stuart A. Jackson, Ré, Parser & Partners, New York, NY, for the appellants/cross-appellees.

Ryan K. Bakhtiari, Aidikoff & Uhl, Beverly Hills, CA, for the appellees/cross-appellants.

Before HALL, THOMAS, and PAEZ, Circuit Judges.

## OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge.

Barington Capital Group, L.P., Morton Gropper, Bruce Gropper, James Mitarotonda, Jerome Snyder, and John Telfer (collectively, "Barington") appeal the district court's order confirming the compensatory damages, punitive damages, interest, and fees portions of a National Association of Securities Dealers (NASD) arbitration award in favor of Herbert and Lorine Coutee. The Coutees cross-appeal the district court's decision to vacate the attorney's fee portion of the award.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand with instructions to enter an order confirming the arbitration award in its entirety.

## FACTS

Herbert and Lorine Coutee are retired factory workers with second-grade educations. In December 1997, the Coutees' grandson-in-law, Jason Wirtzer, arranged for Mr. Coutee's Individual Retirement Account (IRA) to be transferred to Barington Capital Group, L.P., an investment firm offering brokerage services.[1] Mr.

---

1. During an approximately five-year period beginning in 1994, Wirtzer informally man-

Coutee signed a letter authorizing the account transfer and requesting that all communications related to the account be directed to Wirtzer. Mr. Coutee also signed a customer agreement, which contained a New York choice of law provision.

The brokers of record for Mr. Coutee's account at Barington were Morton Gropper and Bruce Gropper ("the Groppers"). Shortly after Wirtzer opened Mr. Coutee's account, he instructed the Groppers to sell Mr. Coutee's transferred assets and to use the proceeds to purchase "penny stocks." By March 1998, nearly 100% of Mr. Coutee's Barington portfolio consisted of stock in two high-risk companies, ATM Holdings, Inc. ("ATMH") and Environmental Technology, Inc., and the stated value of the account had fallen from approximately $55,000 to approximately $600.

In 1999, the Coutees met with an accountant to prepare their 1998 tax return and to make arrangements for Mr. Coutee's mandatory IRA distributions. At this time, the Coutees discovered that essentially all of the funds in the Barington account had been lost. On June 7, 2000, the Coutees filed a Statement of Claim with the National Association of Securities Dealers (NASD) against Barington and related parties.[2] The Coutees sought damages for alleged breaches of fiduciary duty, unauthorized trading, fraud, failure to supervise, and violations of state and federal securities laws, NASD Rules, and New York Stock Exchange Rules.

On January 30, 2002, a three-member arbitration panel awarded the Coutees $54,000 in compensatory damages, $21,600 in interest, $975 in costs, $30,240 in attorney's fees, and $100,000 in punitive damages.[3] Barington and the Coutees filed timely petitions seeking, respectively, vacation and confirmation of the award. On May 20, 2002, the district court vacated the attorney's fee portion of the award and confirmed the remainder. Both parties timely appealed.

## STANDARDS OF REVIEW

 We "review the confirmation or vacation of an arbitration award like any other district court decision … accepting findings of fact that are not clearly erroneous but deciding questions of law de novo." *Barnes v. Logan*, 122 F.3d 820, 821 (9th Cir.1997) (citations and internal quotation marks omitted), *cert. denied*, 523 U.S. 1059, 118 S.Ct. 1385, 140 L.Ed.2d 645 (1998). With respect to the underlying arbitration decision, however, our review is "both limited and highly deferential." *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir.1996). We may vacate an arbitration award only if the conduct of the arbitrators violated the Federal Arbitration Act (FAA),[4] or if the award itself is "completely irrational" or "constitutes manifest disregard of the law." *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th

---

aged the Coutees' retirement assets. Wirtzer is not a licensed broker or financial advisor.

2. The Coutees did not take any legal action against Wirtzer. Wirtzer's potential liability is not relevant to the disposition of any of the issues raised in this appeal.

3. Punitive damages were assessed only against Barington Capital Group.

4. The FAA provides that a federal court may vacate an arbitration award (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators were guilty of misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10.

Cir.2003) (citations and internal quotation marks omitted).

## MANIFEST DISREGARD

■■■ Barington contends that the arbitrators manifestly disregarded the facts by concluding that Barington's conduct caused the Coutees to suffer a $54,000 loss. We may vacate an arbitration award *"only if that award is completely irrational,* exhibits a manifest disregard of law, or otherwise falls within one of the grounds set forth in [the FAA]." *G.C. & K.B. Invs.,* 326 F.3d at 1105 (quoting *LaPine Tech. Corp. v. Kyocera Corp.,* 130 F.3d 884, 888 (9th Cir.1997)) (emphasis added). Manifest disregard of the facts is not an independent ground for vacatur in this circuit.[5]

■■■ In some circumstances, however, legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law. *See American Postal Workers Union v. United States Postal Serv.,* 682 F.2d 1280, 1284–86 (9th Cir. 1982), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). In *American Postal,* we reviewed an arbitration decision requiring the Postal Service to reinstate Michael Murphy, a former employee who conceded that he had participated in a strike for approximately two hours. *Id.* at 1283. Pursuant to federal law, persons who have participated in a strike against the federal government are prohibited from holding federal government positions. 5 U.S.C. § 7311(3). Because the undisputed facts established that Murphy was barred from reinstatement by § 7311, we vacated the arbitration decision as unenforceable and in manifest disregard of the law. *American Postal,* 682 F.2d at 1286. We also held that the arbitrator's failure to make an explicit factual determination as to Murphy's participation, or non-participation, had no import because the undisputed facts compelled the conclusion that Murphy had participated in a strike. *Id.* at 1284. We noted that although "[i]n most cases, courts must defer to an arbitrator's conclusions even where they are erroneous," here, "a conclusion that Murphy did not strike would constitute manifest disregard of the law." *Id.*

*American Postal* does not establish an independent "manifest disregard of the facts" ground for vacatur. *See, e.g., Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,* 935 F.2d 1019, 1026 (9th Cir.1991) (observing that *American Postal* does not permit a reviewing court to reexamine the "ultimate weight of [the] evidence"). Rather, *American Postal* stands for the unexceptional proposition that a federal court will not confirm an arbitration award that is legally irreconcilable with the undisputed facts. Moreover, *American Postal* recognizes that because facts and law are often intertwined, an arbitrator's failure to recognize undisputed, legally dispositive facts may properly be deemed a manifest disregard for the law.

■■■ Barington argues that the arbitrators manifestly disregarded legally dis-

---

5. Similarly, it does not appear that any other circuit has adopted a manifest disregard of the facts standard. Barington cites *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197 (2d Cir. 1998), for the proposition that, in the Second Circuit, an arbitration decision can be vacated based on "over-whelming" evidence in favor of the party seeking vacatur. However, the Second Circuit has recently clarified that *Halligan* is based on the traditional manifest disregard of the *law* standard. *See GMS Group v. Benderson,* 326 F.3d 75, 79 (2d Cir. 2003) (observing that in *Halligan,* "we could only conclude that [the arbitrators] had disregarded [the law], as any other explanation would strain credulity given the quantity and quality of evidence ... [W]e reached this conclusion applying the traditional manifest disregard standard").

positive facts by relying on a March 1998 monthly statement, which lists the value of Mr. Coutee's account as approximately $600, to determine the amount of loss incurred by Mr. Coutee. As Barington points out, the March 1998 statement does not reflect the value of "unpriced" securities such as the ATMH and Environmental Technology stocks that formed a substantial percentage of Mr. Coutee's portfolio. Barington contends that these unpriced securities had substantial value in March 1998 and that the actual value of Mr. Coutee's account at that time was more than $70,000. The Coutees dispute Barington's valuation, pointing to an internal Barington memorandum that states, "Coutee client bought 23M of ATMH at $2.00 per share. Stock is now worthless."

The arbitrators considered this factual dispute and resolved it in favor of the Coutees. We have no authority to reweigh the evidence. *See, e.g., Pacific Reinsurance*, 935 F.2d at 1026. Barington has not directed our attention to any legal errors in the arbitrators' analysis of the March 1998 statement, nor does Barington contend that the decision to credit the Coutee's evidence was irrational. Therefore, we cannot conclude that the arbitrators manifestly disregarded the law by awarding $54,000 in compensatory damages to Coutees.

### PUNITIVE DAMAGES

A federal court may vacate an arbitration award, or a portion thereof, if the arbitrators acted beyond their authority. 9 U.S.C. § 10. Arbitrators act beyond their authority if they fail to adhere to a valid, enforceable choice of law clause agreed upon by the parties. *Barnes v. Logan*, 122 F.3d 820, 823 (9th Cir.1997). If such error is harmless, however, it is not grounds for vacatur. *Id.* Here, the district court held that the arbitrators erred by failing to apply New York law to the dispute, but that such error was harmless. Barington challenges the district court's harmless error analysis, contending that the error was not harmless because New York law imposes a more stringent punitive damages standard than does California law.[6]

In *Barnes*, we held that application of the California punitive damages standard in the face of a Minnesota choice of law clause was harmless error. *Id.* We reached this conclusion even though the case involved purely economic damages and one Minnesota Court of Appeals panel had expressly limited punitive damages to cases involving personal injury. *Id.* We reasoned that because another Minnesota Court of Appeals panel had rejected the personal injury limitation, the arbitrators could not be said to have manifestly disregarded Minnesota law by rendering the punitive damages award. *Id.* Under *Barnes*, a mere difference between the law of two states is not grounds for vacating an arbitration award. To the contrary, *Barnes* holds that an arbitration award should be confirmed unless the arbitrators *could not* have rendered the same award

---

**6.** Barington also invites us to reject the harmless error doctrine altogether. Barington suggests that we adopt a bright-line rule under which an erroneous choice of law would be automatic grounds for vacatur. According to Barington, the harmless error doctrine is inconsistent with the FAA because it "effectively allows arbitrators to exceed their powers under certain circumstances." We disagree. The FAA does not mandate vacatur where an arbitration panel has exceeded its powers. Rather, it provides that a federal court *"may* make an order vacating the award." 9 U.S.C. § 10 (emphasis added). Moreover, a choice of law error sometimes has no effect on the outcome of a proceeding. Requiring the parties to re-arbitrate under such circumstances would substantially and unnecessarily burden both the parties and the arbitration process.

without manifestly disregarding the governing law.

 Applying the *Barnes* standard, our task is to determine whether the arbitrators could have made the same punitive damages award without manifestly disregarding New York law. In California, a plaintiff can recover punitive damages by proving by clear and convincing evidence that the defendant "has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). New York has no analogous statute. New York's highest state court, however, has held that punitive damages are appropriate in cases involving "willful, wanton, and reckless misconduct." *Giblin v. Murphy*, 73 N.Y.2d 769, 772, 536 N.Y.S.2d 54, 532 N.E.2d 1282 (1988). Recent cases have elaborated on this standard, holding that "[t]o sustain a claim for punitive damages in tort, one of the following must be shown: intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another." *Don Buchwald & Assoc. v. Rich*, 281 A.D.2d 329, 723 N.Y.S.2d 8, 9 (2001) (distinguishing from breach of contract cases, in which punitive damages are not available unless the harm is directed to the general public); *see also Pearlman v. Friedman Alpren & Green L.L.P.*, 300 A.D.2d 203, 750 N.Y.S.2d 869, 870 (2002) (citing the *Buchwald* factors favorably).

Based on the evidence presented at the arbitration hearing, the arbitrators could have concluded that the Coutees were unusually vulnerable parties because of their status as uneducated retirees, that the defendants were aware of and consciously disregarded substantial financial risks to the Coutees,[7] and/or that Barington and its employees had a history of similar misconduct.[8] We see no reason that, under New York law, such circumstances could not be deemed aggravating or outrageous circumstances or conscious acts that willfully and wantonly disregarded the rights of the Coutees. Either finding would support the $100,000 punitive damages award. Thus, the arbitrators' award is not manifestly at odds with New York law. We affirm the district court's confirmation of the award of punitive damages.

## ATTORNEY'S FEES

 The Coutees cross-appeal the district court's vacatur of the attorney's fee portion of the award. As noted above, a federal court may vacate an arbitration award if the arbitrators acted beyond their authority by failing to adhere to a valid choice of law clause. *Barnes v. Logan*, 122 F.3d 820, 823 (9th Cir.1997). In the instant case, the arbitrators granted attorney's fees to the Coutees pursuant to California Welfare and Institutions Code section 15657, which provides that where a defendant is guilty of financial abuse toward an elder, "the court shall award to the plaintiff reasonable attorney's fees and costs." Cal. Wel. & Inst.Code § 15657(a).

Because the arbitration agreement between Barington and the Coutees contained a New York choice of law clause, the district court held that the arbitrators exceeded their authority by applying California law. The district court further found that the error was not harmless because under New York law, "attorney's

---

7. The Coutees presented evidence that Barington employees were aware that the ATMH stock was highly risky and eventually became "worthless."

8. Barington had been previously sanctioned by the SEC in connection with failing to properly monitor "penny stock" transactions. The Groppers had been terminated from their previous employment for "repeated failures to exercise proper judgment."

fees are not ordinarily recoverable by prevailing parties absent express statutory or contractual authority."

It appears that the district court overlooked an exception to the general rule. An arbitration panel may award attorney's fees, even if not otherwise authorized by law to do so, if both parties submit the issue to arbitration. *See First Interregional Equity Corp. v. Haughton,* 842 F.Supp. 105, 112–13 (S.D.N.Y.1994) (applying New York law). Barington concedes this point, but argues that the arbitrators' application of California law is nonetheless grounds for vacatur because California law mandates an award of attorney's fees under the circumstances, while New York law is permissive. Under *Barnes,* we need not consider the possible consequences of the mandatory/permissive distinction. The *Barnes* harmless error standard inquires only whether the arbitrators acted in manifest disregard of New York law by awarding attorney's fees to the Coutees. *Barnes,* 122 F.3d at 823. Because New York law clearly authorized the arbitrators to award attorney's fees to the Coutees, we answer this inquiry in the negative. The failure to adhere to the California choice of law clause was, therefore, harmless error. We reverse the district court's decision to vacate the attorney's fee portion of the award.

## CONCLUSION

The arbitration award entered in favor of the Coutees was consistent with the FAA, and was not rendered in manifest disregard of the law. We **AFFIRM** the district court's confirmation of the compensatory damages, punitive damages, interest, and cost portions of the award, and **REVERSE** the district court's vacatur of the attorney's fee portion of the award.

Appellee/Cross–Appellant shall recover costs.